24-1191

# In the
# United States Court of Appeals
## For the Seventh Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

EURAL BLACK,

*Defendant-Appellant.*

On Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division
No. 05 CR 70-4
The Honorable Lindsay C. Jenkins

## APPELLANT'S OPENING BRIEF AND SHORT APPENDIX

William H. Theis
2027 E. 17th St.
Lawrence, KS 66044
(847) 275-3080
william_theis@att.net

*Attorney for Defendant-Appellant Eural Black*

**APRIL 15, 2024**

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

The undersigned counsel of record for Defendant-Appellant Eural Black furnishes the following list in compliance with Fed. R. App. P. 26.1 and Circuit Rule 26.1:

1.     The full name of the party represented is Eural Black.

2.     Mr. Black is a natural person and not a corporation.

3.     In the district court, Mr. Black was represented by Steven Richard Hunter, the Federal Defender Program, Inc., and William H. Theis. In this Court, Mr. Black is represented by William H. Theis.


 */s/ William H. Theis*
 William H. Theis
 *Attorney for Defendant-Appellant*
 *Eural Black*

Dated: April 15, 2024

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ...................................................i

TABLE OF CONTENTS.................................................... ii

TABLE OF AUTHORITIES ................................................ iv

INTRODUCTION ......................................................... 1

JURISDICTIONAL STATEMENT ......................................... 2

ISSUE PRESENTED FOR REVIEW .................................... 2

STATEMENT OF THE CASE ............................................ 3

I.    Legal Background .......................................................... 3

     A.    The Sentencing Commission and Sentence Reduction
         Statute ................................................................... 3

     B.    The First Step Act of 2018..................................... 6

     C.    Judicial Decisions in the Absence of a Controlling
         Commission Policy Statement ............................. 9

     D.    The Commission's Controlling Policy Statement.............. 11

II.    Procedural History....................................................... 13

     A.    Trial and Sentencing ......................................... 13

     B.    Motion for Sentence Reduction ......................... 13

     C.    The District Court's Decision. ........................... 14

SUMMARY OF THE ARGUMENT ....................................... 16

STANDARD OF REVIEW................................................... 18

ARGUMENT .................................................................. 19

I.    Section 1B1.13(b)(6) controls this case ........................ 19

A.    Congress expressly authorized the Sentencing Commission to issue binding direction on sentence reductions under 18 U.S.C. § 3582(c)(1)(A) ........................ 19

B.    Section 1B1.13(b)(6) does not conflict with *Thacker*.......... 24

C.    Section 1B1.13(b)(6) would control even if the Court were to find that it conflicts with *Thacker*................................28

    1.    The statutory term "extraordinary and compelling" as found in 18 U.S.C. § 3582(c)(1)(A) is broad and ambiguous ............................................................... 28

    2.    Section 1B1.13(b)(6)'s "unusually long sentence" standard does not contradict 18 U.S.C. § 3582(c)(1)(A) ................................................................... 30

    a. Section 1B1.13(b)(6) is consistent with the text of 18 U.S.C. § 3582(c)(1)(A).. ........................................ 31

    b. Section 1B1.13(b)(6) is consistent with the context of 18 U.S.C. § 3582(c)(1)(A). ..................................... 36

    c. Section 1B1.13(b)(6) comports with the history and purpose of 18 U.S.C. § 3582(c)(1)(A). ...................... 38

    3. Section 1B1.13(b)(6) is not contary to amended 18 U.S.C. § 924(c).......................................................... 43

CONCLUSION........................................................................ 50

CERTIFICATE OF COMPLIANCE WITH RULE 32(A)(7)................ 51

CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30.......... 52

CERTIFICATE OF SERVICE...................................................... 53

APPENDIX

    District Court's final judgment......................................... A.1

# TABLE OF AUTHORITIES

## Cases

*Batterton v. Francis*, 432 U.S. 416 (1977) ......................................*passim*

*Branch v. Smith*, 538 U.S. 254 (2003) .................................................... 45

*Chevron, U.S.A., Inc. v. Nat. Resources Def. Council, Inc.*,
    467 U.S. 837 (1984)........................................................ 15, 17, 21, 30

*Concepcion v. United States*, 597 U.S. 481 (2022)........................... 24, 47

*Crowe v. United States*, 430 F. App'x 484 (6th Cir. 2011) .................... 29

*Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261 (2016)......................... 21

*Deal v. United States*, 508 U.S. 129 (1993)...............................................7

*Dean v. United States*, 581 U.S. 62 (2017)...................................... 46, 48

*Deluca v. Lariva*, 586 F. App'x 239 (7th Cir. 2014)............................... 29

*Dillon v. United States*, 560 U.S. 817 (2010).................................*passim*

*District of Columbia v. Wesby*, 583 U.S. 48 (2018)................................ 35

*Kimbrough v. United States*, 552 U.S. 85 (2007) .....................................3

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996)........................................ 30

*Morton v. Mancari*, 417 U.S. 535 (1974)............................................... 44

*Pepper v. United States*, 562 U.S. 476 (2011)........................................ 40

*Robers v. United States*, 572 U.S. 639 (2014)........................................ 22

*Rodriguez v. United States*, 480 U.S. 522 (1987) .................................. 45

*Smiley v. Citibank (S.D.), N.A.*, 517 U.S. 735 (1996)............................ 29

*Stinson v. United States*, 508 U.S. 36 (1993).................................*passim*

*Tapia v. United States*, 564 U.S. 319 (2011) .......................................... 37

*United States v. Addonizio.* 442 U.S. 178 (1979) ................................... 39

*United States v. Black*, 999 F.3d 1071 (7th Cir. 2021) ......................... 14

*United States v. Booker*, 543 U.S. 220 (2005).............................. 5, 17, 22

*United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) .................*passim*

*United States v. Bryant*, 996 F.3d 1243 (11th Cir. 2021) ..................... 23

*United States v. Chen*, 48 F.4th 1092 (9th Cir. 2022)............... 11, 36, 48

*United States v. Crandall*, 25 F.4th 582 (8th Cir. 2022) ................ 11, 23

*United States v. Cunningham*, 554 F.3d 703 (7th Cir. 2009).........*passim*

*United States v. Doe*, 564 F.3d 305 (3d Cir. 2009) ............................... 23

*United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020)...................*passim*

*United States v. Haynes*, 582 F.3d 686 (7th Cir. 2009)......................... 13

*United States v. Jenkins*, 50 F.4th 1185 (D.C. Cir. 2022)............... 11, 23

*United States v. Johnson*, 529 U.S. 53 (2000) ...................................... 36

*United States v. LaBonte*, 520 U.S. 751 (1997) .............................*passim*

*United States v. McCall*, 56 F.4th 1048 (6th Cir. 2022) ...................... 11

*United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020)......................... 11

*United States v. McGee*, 992 F.3d 1035 (10th Cir. 2021)..................... 11

*United States v. McMaryion*, No. 21-50450, 2023 WL
      4118015 (5th Cir. June 22, 2023).................................................... 11

*United States v. McSwain*, 25 F.4th 533 (7th Cir. 2022)...................... 18

*United States v. Mead Corp*, 533 U.S. 218 (2001)................................ 21

*United States v. Moore*, 2024 U.S. App. LEXIS 5010 (7th Cir. Feb. 26, 2024)............................................................25-26

*United States v. O'Hagan*, 521 U.S. 642 (1997) ....................................21

*United States v. Padgett*, -- F. Supp. 3d --, 2024 WL 676767 (N.D. Fla. Jan. 30, 2024) ........................................34

*United States v. Ruvalcaba*, 26 F.4th 14 (1st Cir. 2022) ........... 11, 38, 48

*United States v. Taylor*, 743 F.4th 876 (D.C. Cir. 2014)........................23

*United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021)....................*passim*

*United States v. Vaughn*, 62 F.4th 1071 (7th Cir. 2023) ........................35

*United States v. Williams*, 65 F.4th 343 (7th Cir. 2023) ........... 25, 26, 30

*Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067 (2018) ..........................................................32

**Statutes**

18 U.S.C. § 924............................................................*passim*

18 U.S.C. § 3231............................................................1

18 U.S.C. § 3553............................................................ 4, 16

18 U.S.C. § 3582............................................................*passim*

28 U.S.C. § 994............................................................*passim*

28 U.S.C. § 1291............................................................1

First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018) ........................................................*passim*

Sentencing Reform Act of 1984, Pub. L. No. 98-473, §§ 211–39, 98 Stat. 1837, 1987–2040 (1984)..........................*passim*

U.S.S.G. § 1B1.13............................................................*passim*

**Other Authorities**

Andrew Manuel Crespo, *The Hidden Law of Plea Bargaining*, 118 COLUM. L. REV. 1303 (2018) .....................................7

ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS (2012) ................................... 33, 50

BLACK'S LAW DICTIONARY (5th ed. 1979)........................................ 32, 34

BLACK'S LAW DICTIONARY (11th ed. 2019)............................................ 33

Cecelia Klingele, *Changing the Sentence Without Hiding the Truth: Judicial Sentence Modification as a Promising Method of Early Release*, 52 WM. & MARY L. REV. 465 (2010) .................................................................... 39

DEP'T OF JUST., *First Step Act Annual Report* (April 2023).....................6

FED. BUREAU OF PRISONS, *Population Statistics* (updated March 14, 2024) .................................................................. 34

HUMAN RIGHTS WATCH, *An Offer You Can't Refuse: How Federal Prosecutors Force Drug Defendants to Plead Guilty* (Dec. 2013) .......................................................... 7, 42

S. Rep. No. 98-225 (1983), *as reprinted in* 1983 U.S.C.C.A.N. 3182 ....................................................*passim*

Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28,254 (May 3, 2023) .................................................... 12, 27, 33

U.S.S.G. App. C, Amend. 814, Reason for Amendment (Nov. 1, 2023) ........................................................... 41

U.S. SENT'G COMM'N, *Estimate of the Impact of Selected Sections of S. 1014, The First Step Act Implementation Act 2021* (Oct. 2021).......................................................... 34

U.S. SENT'G COMM'N, *Fifteen Years of Guideline Sentencing* (2004) ...........................................................................7

vii

U.S. SENT'G COMM'N, *Mandatory Minimum Penalties for Firearm Offenses in the Federal Criminal Justice System* (2018) ..................................................................7

U.S. SENT'G COMM'N, *Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System* (2011) ............................................................. 7, 42

WEBSTER'S THIRD NEW INT'L DICTIONARY (1981)................................. 32

## INTRODUCTION

Mr. Black is serving a 40-year sentence, which includes five years for a firearms conviction under 18 U.S.C. § 924(c) and another 25 years for a second 924(c) conviction, each a mandatory minimum sentence. Since Black's sentencing, two significant events have occurred.

Congress has amended 924(c)'s penalty structure, and if he were sentenced today, he would face five years on each conviction—a mandatory minimum, in addition to the 10 years he received on the non-gun counts. The gross disparity between the sentence he received and the one he would get if he were sentenced today, considered with other factors, provides the district court with an extraordinary and compelling reason for a sentence reduction (as a matter of discretion) under 18 U.S.C. § 3582(c)(1)(A), as defined in U.S.S.G. § 1B1.13(b)(6), a Commission policy statement issued in 2023.

The district court denied relief to Black because it believed that section 1B1.13(b)(6) is categorically invalid. The district court relied on *United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021), to find that the Sentencing Commission had overstepped its authority.

The district court's reliance on *Thacker* was misplaced. *Thacker* did not rule on the Commission's authority to define what courts can find to be an extraordinary and compelling reason for a sentence reduction. When *Thacker* was decided, there was no policy statement that applied to defendant-filed

§ 3582(c)(1)(A) motions, so courts were setting the standard on their own. *Thacker* does not provide any restraint on Commission action that came two years later. In finding otherwise, the district court failed to apply the Sentencing Reform Act as written, in which Congress delegated to the Sentencing Commission the job of deciding what circumstances can be deemed "extraordinary and compelling reasons" for sentence reduction.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 18 U.S.C. § 3231 over this criminal prosecution for violations of 18 U.S.C. §§ 924(c), 1951, 1962(d), and 21 U.S.C. §§ 844 and 846. The district court had jurisdiction under 18 U.S.C. § 3582(c)(1)(A) to grant a reduction in sentence. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

The final judgment was entered on the docket on February 6, 2024. R. 781; A. 1. Notice of appeal was timely filed on February 6, 2024. R. 782. There were no motions that would have tolled the time for filing a notice of appeal. This appeal is from a final order or judgment that disposes of all parties' claims.

## ISSUE PRESENTED FOR REVIEW

Is U.S.S.G. § 1B1.13(b)(6) a valid exercise of the Sentencing Commission's express authority and duty under 28 U.S.C. § 994(t) to

promulgate policy statements that describe "extraordinary and compelling reasons" for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)?

## STATEMENT OF THE CASE

## I. Legal Background

### A. The Sentencing Commission and the Sentence Reduction Statute

The Sentencing Reform Act of 1984 established the structure of the modern federal sentencing system. *See* Pub. L. No. 98-473, §§ 211-39, 98 Stat. 1837, 1987-2040 (1984). As part of that law, Congress created the United States Sentencing Commission and directed it to "formulate and constantly refine national sentencing standards." *Kimbrough v. United States*, 552 U.S. 85, 108 (2007).

The Sentencing Reform Act abolished parole at the federal level, replacing it with then-mandatory guidelines that would be promulgated by the Commission. But Congress recognized that in the absence of parole, there would be "unusual cases" in which "changed circumstances" justify reducing "unusually long sentence[s]." S. Rep. No. 98-225, at 55 (1983), *as reprinted in* 1983 U.S.C.C.A.N. 3182, 3238. Section 3582(c)(1)(A)(i) (the "Sentence Reduction Statute") is one of the ways in which Congress empowered courts to reduce a sentence once imposed. Sometimes referred to as the "compassionate release" statute—a term that nowhere appears in its text—

this provision allows a district court to reduce a prisoner's sentence if (1) "extraordinary and compelling reasons warrant such a reduction" and (2) the "factors set forth in [18 U.S.C. §] 3553(a)" support the reduction. 18 U.S.C. § 3582(c)(1)(A)(i). The reduction also must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A).

Congress did not define the broad, inclusive phrase "extraordinary and compelling reasons." Instead, it gave the Sentencing Commission the explicit responsibility to do so, instructing the Commission to "promulgat[e] general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A)" that "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t); see also § 994(a)(2)(C) (providing that the Commission shall promulgate general policy statements that "in the view of the Commission would further the purposes set forth in" 18 U.S.C. § 3553(a)(2), including the appropriate use of the sentencing modification provisions of § 3582(c)). Congress imposed a single limitation: "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.*

Many years later, the Supreme Court would hold that the Commission's mandatory initial-sentencing guidelines violated the Sixth Amendment. *See United States v. Booker*, 543 U.S. 220, 226-27, 233-37 (2005). But the Commission's standards for sentence-reduction proceedings raise no constitutional issue, and they continue "to bind the courts," as Congress originally intended. *Dillon v. United States*, 560 U.S. 817, 830 (2010) (addressing § 3582(c)(2), which contains the same requirement that any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission"); *see also United States v. Cunningham*, 554 F.3d 703, 708 (7th Cir. 2009) (explaining in the analogous § 3582(c)(2) context that "the Commission's policy statements should for all intents and purposes be viewed as part of the statute").

Originally, only the Bureau of Prisons ("BOP") had the authority to file a sentence-reduction motion. The BOP rarely did so, and there was heavy criticism of the BOP's parsimonious use of the provision in its role as "gatekeep[er]" for relief from grossly excessive sentences. *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020). As a result of the BOP's practices, few such motions were litigated from 1984 to 2018, and scant precedent developed to address what could qualify as an "extraordinary and compelling reason."

The Sentencing Commission's policy statement at § 1B1.13, which before 2023 was amended several times, has always enumerated specific potential "extraordinary and compelling reasons related to age, health, and family circumstances. In every version, the Commission has also included a catch-all category for "an extraordinary and compelling reason other than, or in combination with" these examples, "[a]s determined" by the BOP, without any limitation other than § 994(t)'s "rehabilitation alone" limitation.

### B.    The First Step Act of 2018

In 2018, Congress passed the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), a landmark federal law that, as the Department of Justice has noted, "was the culmination of a bipartisan effort to improve criminal justice outcomes and reduce the size of the federal prison population, while maintaining public safety." DEP'T OF JUST., *First Step Act Annual Report* 4 (April 2023). That law effected two significant changes to the federal criminal code that are relevant here.

First, Congress eliminated the widely criticized practice of piling consecutive mandatory-minimum sentences for firearm offenses on top of one another, although they relate to a single course of conduct, to produce grossly excessive sentences.  For the thirty years preceding the First Step Act, "second or subsequent" convictions under 18 U.S.C. § 924(c), which imposes

graduated minimum sentences when a firearm is involved in certain crimes, each resulted in a mandatory consecutive sentence of 25 years, even if they were obtained in the same case as the first such conviction. *See Deal v. United States*, 508 U.S. 129, 132 (1993). The practice of charging multiple section 924(c) counts in a single case became known as "stacking."

The damage that "stacking" caused was compounded by the way in which prosecutors used the statute's mandatory sentencing provisions. Too often, the government chose to stack multiple section 924(c) counts not against the most culpable defendants, but rather against those who refused to cooperate or plead guilty. *See* Andrew Manuel Crespo, *The Hidden Law of Plea Bargaining*, 118 COLUM. L. REV. 1303, 1313-14 (2018); HUMAN RIGHTS WATCH, *An Offer You Can't Refuse: How Federal Prosecutors Force Drug Defendants to Plead Guilty* 5 (Dec. 2013). Even more troubling, the Sentencing Commission reported many times that the government for decades stacked section 924(c) counts in racially disproportionate fashion against Black men. *See* U.S. SENT'G COMM'N, *Fifteen Years of Guideline Sentencing* 90 (2004); U.S. SENT'G COMM'N, *Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System* 274 (2011); U.S. SENT'G COMM'N, *Mandatory Minimum Penalties for Firearm Offenses in the Federal Criminal Justice System* 6 (2018).

Responding to this history, the 2018 First Step Act eliminated the excessive 25-year sentences mandated by section 924(c) in cases like this one. Specifically, those enhanced sentences can no longer be imposed when the "second or subsequent" section 924(c) convictions are obtained in the same case as the first such conviction. Pub. L. No. 115-391, § 403(a), 132 Stat. at 5221-22. The 25-year enhanced sentences now apply only when a defendant already has a final section 924(c) conviction from a prior proceeding at the time he commits a second or subsequent such offense. *Id.* Congress referred to this change as a "clarification." *Id.* It made the changes to section 924(c) applicable to all cases in which a sentence has not been imposed, but it did not require resentencing for all cases in which a stacked sentence had already been imposed. Pub. L. No. 115-391, § 403(b), 132 Stat. at 5222.

Separately in the First Step Act, Congress amended § 3582(c)(1)(A)'s sentence-reduction procedure: Congress removed the BOP as the gatekeeper for sentence-reduction motions and, for the first time, permitted prisoners themselves to seek such relief. Pub. L. No. 115-391, § 603(b), 132 Stat. at 5239. Congress did not alter the SRA's broad "extraordinary and compelling" standard, nor did it alter the Sentencing Commission's authority and obligation to flesh out that standard.

### C. Judicial Decisions in the Absence of a Controlling Commission Policy Statement

Shortly after the First Step Act became law, the Commission lost its quorum and could not issue a policy statement that would apply to the prisoner-filed motions Congress had newly authorized. Because the Commission's then-existing policy statement referenced only BOP-filed motions—with a catch-all provision based solely on BOP discretion—nearly every court, including this one, found that statement inapplicable to motions filed by prisoners. *See United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).

This issue first arose during the COVID-19 pandemic, which prompted numerous motions, most of which argued that the pandemic and related health issues presented extraordinary and compelling circumstances. But many motions raised varied, unrelated issues. One that came up with some regularity concerned the First Step Act's abolition of same-case § 924(c) stacking and also another First Step Act sentencing change, which eliminated the mandatory life sentence for drug cases not involving a death. Without a controlling policy statement, the courts of appeals split over whether those changes could constitute "extraordinary and compelling reasons" for granting a prisoner-filed motion.

In *United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021), a stacked 924(c) case, this Court entered the fray. This Court in *Thacker* confirmed *Gunn's* premise; namely, section 1B1.13 applied only to motions initiated by the Director of the Bureau of Prisons. A defendant seeking early release must rely solely on section 3582(c)(1)(A). But *Thacker* held that the amendment to section 924(c) could not be a basis for sentence reduction. The Court noted that Congress had chosen to make the amendment to section 924(c) prospective, not retroactive. 4 F.4th at 573. *Thacker* saw nothing extraordinary in this limitation. "[T]here is nothing 'extraordinary' about leaving untouched the exact penalties that Congress prescribed and that a district court imposed for particular violations of a statute." *Id.* at 574.

Although *Thacker* emphasized the meaning of the word "extraordinary" as its rationale for the decision, its concern seems to have been based, in part, on the fear that granting relief to the defendant would contradict Congress's intent in amending § 924(c). 4 F.4th at 574. Specifically, this Court expressed concern that, if a court were to grant a sentence reduction, it might "allow a federal prisoner to invoke the more general § 3582(c) to upend the clear and precise limitation Congress imposed on the effective date of the First Step Act's amendment to § 924(c)." 4 F.4th at 574. It also expressed concern that

such a sentence reduction could undermine the limits imposed by 28 U.S.C. § 2255 on post-conviction remedies. 4 F.4th at 574-75.

The First, Fourth, Ninth, and Tenth Circuits (and for all practical purposes the Second Circuit) came to the opposite conclusion. The Third, Fifth, Sixth, Seventh, Eighth, and D.C. Circuits, sided with *Thacker*.[1] This split developed entirely in the absence of an applicable policy statement, and during a period—the pandemic—when filings under § 3582(c)(1)(A) were sky-high. *See* U.S. Sent'g Comm., *Data Snapshot: Number of Compassionate Release Motions by Month of Court Decision* (Oct. 1, 2019–Sept. 30, 2023), *at* https://www.ussc.gov/research/data-reports/compassionate-release-data-reports.

### D. The Commission's Controlling Policy Statement

In August of 2022, the Commission achieved a quorum, and the next year it amended § 1B1.13 in order to account for defendant-filed motions. It

---

[1] *See United States v. Ruvalcaba*, 26 F.4th 14, 24-26 (1st Cir. 2022) (holding that changes in the law could be considered "extraordinary and compelling" for a sentence-reduction motion); *United States v. McCoy*, 981 F.3d 271, 286-88 (4th Cir. 2020); *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022); *United States v. McGee*, 992 F.3d 1035, 1047-48 (10th Cir. 2021); *see also Brooker*, 976 F.3d at 237-38. *But see United States v. Andrews*, 12 F.4th 255, 260-61 (3d Cir. 2021); *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) (unpublished); *United States v. McCall*, 56 F.4th 1048, 1050 (6th Cir. 2022); *United States v. Crandall*, 25 F.4th 582, 585-86 (8th Cir. 2022); *United States v. Jenkins*, 50 F.4th 1185, 1198 (D.C. Cir. 2022).

also expanded its description of what could constitute "extraordinary and compelling reasons" by (i) adding two new subcategories to the "Medical Circumstances of the Defendant" ground for relief; (ii) making three modifications to the "Family Circumstances" ground; (iii) adding a new ground called "Victim of Abuse"; and (iv) adding a new ground, at issue here, called "Unusually Long Sentence." U.S.S.G. § 1B1.13. It maintained a catch-all category, but now that category is controlled by the district court's discretion, rather than the BOP. See § 1B1.13(b)(5).

The new "unusually long sentence" subcategory, hereinafter also referred to as "(b)(6)," allows a judge to consider a change in law in determining whether there are extraordinary and compelling reasons for sentence reduction, but only if four conditions are satisfied: (i) the defendant is serving an unusually long sentence; (ii) the defendant has served at least ten years of that sentence; (iii) an intervening change in the law has produced a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed; and (iv) the court has fully considered the particularized circumstances of the defendant. U.S.S.G. § 1B1.13(b)(6). In its Reason for Amendment, 88 Fed. Reg. 28258, the Commission noted legislative history for the Sentencing Reform Act indicating that "unusually long sentences" may be a circumstance warranting

a reduction in sentence. S. Rep. No. 98-225, at 55-56, *as reprinted in* 1983
U.S.C.C.A.N. at 3238-39.

## II.    Procedural History

### A.    Trial and Sentencing

Eural Black, a Chicago police officer at the time of his indictment, was
convicted on eight counts. Two of these were drug offenses, and paired with
each drug offense was a charge under 18 U.S.C. § 924(c) that he had carried a
gun in furtherance of the crime. R. 282. Under § 924(c)'s old stacking regime,
he was subject to a mandatory minimum sentence of five years on a first gun
conviction, and in addition a mandatory minimum sentence of 25 years for a
second gun conviction. He received a 10-year sentence on the non-gun counts,
together, followed by five years on one gun count, and then 25 years on the
second gun count, for a total of 40 years' imprisonment. His conviction and
sentence were affirmed in *United States v. Haynes*, 582 F.3d 686 (7th Cir.
2009).

### B.    Motion for Sentence Reduction

After the Commission's 2023 Policy Statement went into effect, Black
moved for a sentence reduction, based on U.S.S.G. § 1B.13(b)(6): he had
already served more than 10 years on an unusually long sentence and, given
the amendment to 18 U.S.C. § 924(c), there was a gross disparity between the

sentence being served and the sentence likely to be imposed today. R. 769.[2] Black submitted that section 1B1.13(b)(6) had supplanted *Thacker*. Black further submitted that his total sentence should be reduced to 20 years, five years on each of the two gun counts and 10 years on the non-gun counts.

The government opposed relief. R. 774. It did not dispute that Black had exhausted the administrative remedy. It did not claim that Black was a danger to the community. Chiefly, it argued, as it has argued in many cases across the country, that the Sentencing Commission had overstepped its authority and that section 1B1.13(b)(6) is categorically invalid.

### C.    The District Court's Decision

The district court denied relief for the sole reason that it considered itself bound by *Thacker*. R. 781; A. 1. The district court accepted that the Commission has the duty and the authority to issue policy statements to define the meaning of "extraordinary and compelling reasons." Moreover, the district court found that "extraordinary and compelling" is ambiguous enough to call for Commission action. "The Court concludes that 'extraordinary and

---

[2] During the pandemic, Black had requested a sentence reduction because he was undergoing chemotherapy for cancer. This request was denied, and this Court remanded in *United States v. Black*, 999 F.3d 1071 (7th Cir. 2021). On remand, his request was denied because in the interim his treatment had run its course and Black had been vaccinated for COVID-19. In addition, *Thacker* barred relief. R. 758.

compelling' is ambiguous, so the Seventh Circuit's interpretation of that term does not prevent the Commission from construing that term differently." R. 781, at 16; A. 16.

Having agreed to these propositions, the district court should have recognized that § 1B1.13 is now incorporated into § 3582(c)(1)(A), and it should have considered its application to Black's motion. *See United States v. Cunningham*, 554 F.3d 703, 708 (7th Cir. 2009) (when discussing another of § 3582(c)'s subsections, with the same relevant language, explaining that "the Commission's policy statements should for all intents and purposes be viewed as part of the statute"). Instead, the district court focused on the doctrine in *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), which has no application here, and asked if the policy statement was "reasonable" under the second step of that doctrine. The district court then held that the revised policy statement was unreasonable, because *Thacker* had already construed the ambiguous phrase "extraordinary and compelling" and left no room for the Commission to make a different construction. R. 781, at 18-19; A. 18-19. The district court took the position that, although the Commission can define ambiguous language, a court can stake out a prior, superior claim, foreclosing later efforts by the Commission to define the ambiguous language.

Since the court held that section 1B1.13(b)(6) was invalid, it rendered no opinion on whether Black would meet the (b)(6) standard or whether the court would ultimately grant him a reduction. "Because the Court denies his motion based on this threshold legal issue, it takes no position on whether it would find extraordinary and compelling circumstances if it had the discretion to do so or how it would weigh the 18 U.S.C. § 3553(a) factors." R. 781, at 25; A. 25.

Black took a timely appeal. R.782.

## SUMMARY OF THE ARGUMENT

What the district court did in this case is profound—it categorically struck down a policy statement that was duly promulgated by the Sentencing Commission, although Congress in the Sentencing Reform Act expressly delegated to the Commission policy-making authority in this space. Also, the district court was wrong: it erred in holding that this Court's decision in *United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021), invalidates § 1B1.13(b)(6). Contrary to the district court's thinking, there is no conflict between § 1B1.13(b)(6) and *Thacker*. *Thacker* made an interim effort to fill the temporary gap that resulted from the absence of applicable direction from the Commission about an ambiguous statutory provision.

Now, there is no gap: the Commission has fulfilled its congressional mandate to define "extraordinary and compelling" through amended § 1B1.13, including subsection (b)(6). And the Commission's interpretation applies to motions, like this one, filed after its adoption. Moreover, section 1B1.13(b)(6) comports with *Thacker* on the sole conclusion that *Thacker* reached—that changes in the law, standing alone, do not automatically entitle a prisoner to sentencing relief. Section 1B1.13(b)(6) endorsed the different and much more limited position that courts may consider legal changes in the "extraordinary and compelling" context, but only in specific, defined, and rare circumstances. *Thacker* did not, and could not have, preemptively rejected § 1B1.13(b)(6)'s standard two years before section 1B1.13(b)(6) was even formulated.

In any event, section 1B1.13(b)(6) would control even if it conflicted with *Thacker*. Congress expressly delegated authority to the Sentencing Commission to define the ambiguous term "extraordinary and compelling," and the resulting provision is binding (even post-*Booker*). *See Dillon v. United States*, 560 U.S. 817 (2010) (addressing § 3582(c)(2) and U.S.S.G. § 1B1.10). To the extent that administrative law is relevant, it is *Batterton v. Francis*, 432 U.S. 416 (1977), not *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), that provides the appropriate standard. The bottom line

is that § 1B1.13(b)(6) displaces any pre-amendment circuit opinion that is claimed to point in the opposite direction, so long as it does not contradict the statutory language. *Stinson v. United States*, 508 U.S. 36, 38 (1993); *United States v. LaBonte*, 520 U.S. 751, 757 (1997).

Section 1B1.13(b)(6) is not contrary to 18 U.S.C. § 3582(c)(1)(A); rather, it aligns with the text of that statute and also with the context, structure, and history of the Sentencing Reform Act of 1984. The words "extraordinary and compelling" are capacious and flexible, and they invite a holistic focus on whether a *combination* of circumstances (some of which might be ordinary) can together make a case *extraordinary* and also *compel* a court to act to reduce the sentence. The Commission's decision to define "extraordinary and compelling" so as to cover unusually long sentences where there is a gross disparity related to a legal change (if a constellation of other unusual factors are also present) is entirely consistent with § 3582(c)(1)(A) and the Sentencing Reform Act, even if this Court or others, on their own, would not have chosen to define the phrase the same way.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's denial of a motion for sentence reduction when the decision rests on a question of law. *United States v. McSwain*, 25 F.4th 533, 537 (7th Cir. 2022).

## ARGUMENT

Black sought a sentence reduction pursuant to § 3582(c)(1)(A) and the binding guidance issued by the Commission in § 1B1.13(b)(6). The district court erred in concluding that § 1B1.13(b)(6) was invalid and granted the court no authority to give relief.

## I.     Section 1B1.13(b)(6) controls this case.

Congress expressly instructed the Sentencing Commission to formulate uniform standards that would bind courts when prisoners sought sentence reductions. The Commission fulfilled that mandate by issuing § 1B1.13(b)(6), and this Court's decision in *Thacker* neither conflicts with nor precludes the guidance in subsection (b)(6). Section 1B1.139(b)(6) therefore controls here.

### A.     Congress expressly authorized the Sentencing Commission to issue binding direction on sentence reductions under 18 U.S.C. § 3582(c)(1)(A).

In the Sentencing Reform Act of 1984, Congress expressly charged the Commission with issuing policy statements on the "application of the guidelines or any other aspect of sentencing," including "sentence modification." 28 U.S.C. § 994(a)(2)(C). Congress did not define what "extraordinary and compelling reasons" means, except to exclude "[r]ehabilitation . . . alone." *Id.* § 994(t). Instead, Congress explicitly instructed the Commission to "describe what should be considered

19

extraordinary and compelling." *Id.* The Commission exercised that statutory authority when it promulgated § 1B1.13(b)(6).

When Congress expressly directs an agency to decide an issue, the agency's decision has the force of law. Courts cannot substitute their own view of how to deal with a problem entrusted to agency action. This doctrine is rooted in *Batterton v. Francis*, 432 U.S. 416 (1977), where the Court considered an agency's definition of a term—"unemployed"—in a context in which Congress had expressly delegated to the agency the job of defining that term.[3] As *Batterton* framed the issue, "Thus, the actual issue we must decide is not how the statutory term should be interpreted, but whether the Secretary's regulation is proper." *Id.* at 424. The Court described regulations promulgated as a result of express delegation as having "legislative effect."

---

[3] In *Batterton*, Congress had directed the agency to define whether a claimant of Government aid for dependent children was "unemployed." The agency regulation denied "unemployed" status to some individuals who were out a job, but for reasons that the agency decided disqualified them from assistance. A lower court invalidated the regulation, reasoning that a person is unemployed whenever they are out of a job, and the reason for the unemployment is not part of the meaning of the word "unemployed." *Batterton* reversed. "We do not agree that the statutory language is so unambiguous. The term 'unemployment' is often used in a specialized context where its meaning is other than simply not having a job." *Id.* at 427. Given this context, the agency was not limited to a single dictionary definition of the word. "[W]e conclude that the statutory term is capable of more than the tautological definition imposed by the District Judges and the Court of Appeals." *Id.* at 428.

*Id.* at 425. "In a situation of this kind, Congress entrusts to the Secretary, rather than to the courts, the primary responsibility for interpreting the statutory term." *Id.* For that reason, "A reviewing court is not free to set aside those regulations simply because it would have interpreted the statute in a different manner." *Id.*; *see also United States v. O'Hagan*, 521 U.S. 642 (1997) (confirming that an agency's power is not limited by common law definitions associated with statutory language the agency is authorized to define, and quoting *Batterton* for the proposition that courts owe such an "agency's judgment 'more than mere deference or weight'").[4]

Although the Commission has broad authority, its pronouncements must be consistent with the Constitution and federal statutes. *Stinson v. United States*, 508 U.S. 36, 38 (1993). But invalidity results only when the Commission statement is at odds with the "plain language" of a "specific

---

[4] The *Batterton* line of cases is distinct from the *Chevron* doctrine, which concerns the deference owed to an agency when Congress has only implicitly delegated interpretive authority. *See, e.g., Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 286 (2016) (Thomas, J., concurring) (explaining that an "express and clear conferral of authority" to an agency does not implicate *Chevron*). Thus, the currently pending Supreme Court case *Loper Bright Enterprises v. Raimondo*, No. 22-451, which will address the continuing validity of *Chevron*, will not affect *Batterton* or, more generally, the deference due when Congress has expressly identified a gap for an agency to fill. *See United States v. Mead Corp.*, 533 U.S. 218, 228-29 (2001) (distinguishing between express and implicit delegation).

directive[]" from Congress. *United States v. LaBonte*, 520 U.S. 751, 757 (1997).

Moreover, Congress did not just delegate to the Sentencing Commission the job of deciding, as a policy matter, what can be considered "extraordinary and compelling"—Congress also made the Commission's resulting policy statements binding. We know this from the § 3582(c)(2) context. Sections 3582(c)(1)(A) and (c)(2) were drafted together, share a prefatory clause, and appear in the same subsection. Additionally, both provisions permit a sentence reduction only where it "is consistent with applicable policy statements issued by the Sentencing Commission." U.S.S.G. § 3582(c)(1)(A)(ii), (c)(2). In *Dillon v. United States*, the Supreme Court emphasized these features of § 3582(c)(2) in holding that that policy statement is mandatory authority—even post-*Booker*. 560 U.S. 817, 825-26 (2010).[5] The identical language in section 3582(c)(1)(A) has the same effect. *See Robers v. United States*, 572 U.S. 639, 643 (2014) ("identical words" in a statute "have the same meaning").

---

[5] Further, the Sentencing Commission's enabling statute, 28 U.S.C. § 994, speaks of § 3582(c)(1)(A) and (c)(2) together in granting the Commission authority to promulgate policy statements regarding the provisions. 28 U.S.C. § 994(a)(2)(C).

Thus, what this Court has said about the Sentencing Commission's authority regarding § 3582(c)(2) applies equally to § 3582(c)(1)(A): "When Congress granted district courts discretion to modify sentences in section 3582(c)(2), it explicitly incorporated the Sentencing Commission's policy statements limiting reductions." *United States v. Cunningham*, 554 F.3d 703, 708 (7th Cir. 2009). In other words, "the Commission's policy statements should for all intents and purposes be viewed as part of the statute." *Id.* (emphasis added); *accord, e.g., United States v. Doe*, 564 F.3d 305, 310 (3d Cir. 2009) ("The plain language of the statute, therefore, specifically incorporates the Commission's policy statements."); *United States v. Taylor*, 743 F.3d 876, 879 (D.C. Cir. 2014) ("Congress expected—indeed, required— that binding policy statements would govern sentence reduction proceedings.").[6] The Supreme Court recently commented on this when it

---

[6] The only circuit courts that have considered whether § 1B1.13 itself is binding have determined that it is binding where applicable. *United States v. Jenkins*, 50 F.4th 1185, 1193 (D.C. Cir. 2022) (explaining that "[s]ection 1B1.13 binds courts in cases where it is 'applicable'"); *United States v. Crandall*, 25 F.4th 582, 584 (8th Cir. 2022) ("Although a policy statement standing alone may be merely 'advisory,' . . . the statute in this case [§ 3582(c)(1)(A)] makes consistency with an applicable policy statement a *mandatory* condition for a reduction in sentence.") (internal citation omitted); *United States v. Bryant*, 996 F.3d 1243, 1251–52 (11th Cir. 2021) ("The answer to whether the Commission's definition of 'extraordinary and compelling reasons' binds district courts is clear. Indeed, both the Supreme Court and this Court have held that Congress's consistent-with requirement makes the relevant policy statements binding on district courts.").

distinguished a motion under First Step Act § 404 (Fair Sentencing Act retroactivity for crack cases) from a motion under § 3582(c)(1)(A). For motions under § 3582(c)(1)(A), "Congress expressly cabined district courts' discretion by requiring courts to abide by the Sentencing Commission's policy statements." *Concepcion v. United States*, 597 U.S. 481, 496 (2022).

## B.    Section 1B1.13(b)(6) does not conflict with *Thacker*.

The district court in this case accepted that Congress had charged the Commission with defining extraordinary and compelling reasons for sentence reductions, and the district court further recognized that the meaning of extraordinary and compelling was ambiguous. R. 781, at 16; A. 16. Yet the district court denied Black's motion, since "the Court concludes that the Seventh Circuit [in *Thacker*] has interpreted 18 U.S.C. § 3582(c)(1)(A) to preclude a nonretroactive amendment to a statutory sentence from being considered an extraordinary and compelling reason to reduce a sentence." R. 781, at 25; A. 25. But contrary to the court's reasoning, there is no conflict between *Thacker* and (b)(6). That is so for two reasons.

First, *Thacker* did not purport to represent the final word on this issue. *Thacker* had no policy statement to construe, and it envisioned that the Commission would eventually fill in that gap. "We recently explained [in *Gunn*] that, until the Sentencing Commission updates its policy statement to

24

reflect prisoner-initiated compassionate release motions, district courts have broad discretion to determine what else may constitute 'extraordinary and compelling reasons' warranting a sentence reduction." 4 F.4th at 573.

Since *Thacker*, this Court has again recognized that the Commission has authority to define extraordinary and compelling reasons. This Court in *United States v. Williams*, 65 F.4th 343 (7th Cir. 2023), rejecting an effort to overrule *Thacker*, pointedly commented that the Sentencing Commission was then considering a policy statement under § 3582(c)(1)(A), which would cover claims related to legal changes. *Williams* remarked that the question had produced a circuit conflict and that either the Supreme Court or the Commission had the authority to resolve the question. "[T]he issue is teed up, and either the Commission or the [Supreme] Court (we hope) will address it soon." *Id.* at 348.

Even more recently, in an unpublished opinion, *United States v. Moore*, 2024 U.S. App. LEXIS 5010 (7th Cir. Feb. 26, 2024), this Court referred to section 1B1.13(b)(6) as an exception to the holding in *Thacker*. The Court explained that (b)(6) would "permit[] some defendants to seek early release based on intervening changes in constitutional or criminal law." 2024 U.S. App. LEXIS 5010 at *2. The Court noted that Moore could not take advantage of the section, since he had not served 10 years in prison. Although

*Moore* is not a published opinion, it aligns with the view in *Williams* that the Commission can supersede *Thacker*.

Second, *Thacker* simply did not address the constellation of circumstances described in § 1B1.13(b)(6). *Thacker* rejected a position that a prospective statutory change entitles a prisoner to seek a sentence reduction. Section 1B1.13(b)(6) does not say otherwise. It provides only that a highly unusual and unjust set of circumstances can be found, in an individual case, to be extraordinary and compelling: (i) the "defendant received an unusually long sentence"; (ii) the defendant "has served at least 10 years of the term of imprisonment"[7]; (iii) there has been "a change in the law . . . where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed"; and (iv) the court deems relief warranted after giving "full consideration [to] the defendant's individualized circumstances." U.S.S.G. § 1B1.13(b)(6). *Thacker* did not consider, let alone invalidate, this particular confluence of conditions two years before § 1B1.13(b)(6) was even conceived.

---

[7] Only 11.5% of federal sentences are 10 years or longer. U.S. Sent'g Comm'n, *2023 Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary* 12 (2023).

When the Commission acted in 2023, some courts had adopted *Thacker's* reasoning, while others had disagreed. *See supra* note 1. The Commission did not align fully with either side of that pre-amendment circuit split. Rather, the Commission charted a middle path. It provided that sentence duration and changes in the law may be relevant factors in the holistic extraordinary-and-compelling analysis, but the Commission "adopt[ed] a tailored approach that narrowly limits that principle in multiple ways." Sentencing Guidelines for United States Courts, 88 Fed. Reg. at 28,258. The Commission clarified that, "[e]xcept as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." U.S.S.G. § 1B1.13(c).

This Court should not read *Thacker* to have issued an advisory decision, preemptively adjudicating the application of section 3582(c)(1)(A)(i) to the specific and narrower circumstances later identified by the Commission.

### C. Section 1B1.13(b)(6) would control even if the Court were to find that it conflicts with *Thacker*.

Even if the district court were correct that the reasoning in *Thacker* conflicts with § 1B1.13(b)(6), Black would still prevail. As discussed, under the text of § 3582(c)(1)(A), as elucidated by *Dillon* and related cases, the Sentencing Commission's policy statement is incorporated into that statute. Thus, if there is any conflict, § 1B1.13(b)(6) has abrogated *Thacker*, not the other way around. It is true, of course, under *Batterton* or any other conceivably relevant standard, that if § 1B1.13(b)(6) actually contradicts the statute that authorizes it, then (b)(6) would not control. *Stinson v. United States*, 508 U.S. 36, 38 (1993); *United States v. LaBonte*, 520 U.S. 751, 757 (1997). But the district court in this case relied solely on *Thacker* as binding authority. It did not make a finding that § 1B1.13(b)(6) contradicts the text of section 3582(c)(1)(A), nor could it make such a finding.

### 1. The statutory term "extraordinary and compelling," as found in section 3582(c)(1)(A), is broad and ambiguous.

The district court's opinion correctly recognized that the phrase "extraordinary and compelling" was ambiguous and that the Commission had the duty to define the phrase. R. 781, at 16. The statutory phrase "extraordinary and compelling reasons" is, without doubt, broad and ambiguous. Thus, in 2014, this Court observed that, "[T]here are no

standards cabining the BOP's exercise of its statutorily-conferred discretion."
*Deluca v. Lariva*, 586 F. App'x 239, at *3 (7th Cir. 2014); *accord, Crowe v. United States*, 430 F. App'x 484, 485 (6th Cir. 2011) (collecting authorities). Congress with the SRA did not delineate a specific standard for sentence-reduction motions under § 3582(c)(1)(A); instead, it identified a broad principle and charged the newly created Sentencing Commission with deciding, as a policy matter, what sorts of circumstances would be capable of fitting within that principle. *See* § 3582(c)(1)(A); *see also* 994(t).

Indeed, this Court in *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020), recognized the breadth and ambiguity of "extraordinary and compelling." After holding that the then-current version of U.S.S.G. § 1B1.13 did not apply to defense-initiated motions for reduction, *Gunn* expressed concern that the absence of Commission guidance might produce a "Wild West" of sentence reductions. 980 F.3d at 1180. For that reason, *Gunn* cautioned that district courts should not stray too far from the approach of the then-current version of the policy statement. *Id.*

In *Thacker* itself, this Court recognized that the circuits had taken conflicting views on the meaning of the statutory language. 4 F.4th at 575-76. This diversity of opinion confirms that the phrase is ambiguous. *Smiley v. Citibank (S.D.), N.A.*, 517 U.S. 735, 739 (1996) (citing judicial split as

evidence of ambiguity); *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 495 (1996) (similar). The "serious arguments to be considered on both sides" of the judicial disagreement, *United States v. Williams*, 65 F.4th 343, 348 (7th Cir. 2023), underscore this Court's determination in *Gunn* that the statutory language is ambiguous.

### 2. Section 1B1.13's "unusually long sentence" standard does not contradict section 3582(c)(1)(A).

Although the district court in this case correctly concluded that the Commission had the authority to define "extraordinary and compelling," and that the phrase "extraordinary and compelling" is ambiguous, it invalidated the Commission's effort to describe that phrase as "unreasonable," under the *Chevron* standard. In this respect, the district court stumbled badly. Both the government and Black agreed, R. 774, at 9 (government); R. 769, at 14: R. 775, at 3-4 (Black), that *Batterton*, not *Chevron*, provides the more appropriate standard here, since we are talking about an express delegation of authority. Under *Batterton*, a reviewing court is not free to set aside the Commission's work merely because it would have interpreted the statute in a different manner. 432 U.S. at 425. The question is simply whether § 1B1.13(b)(6) contradicts the plain language of § 3582(c)(1)(A). *Stinson v.*

*United States*, 508 U.S. 36, 38 (1993); *United States v. LaBonte*, 520 U.S. 751, 757 (1997).

With a statutory term that is as broad and ambiguous as "extraordinary and compelling," it would be virtually impossible to say that a policy statement duly promulgated by a Commission of judges and attorneys appointed by the President and confirmed by the Senate is contrary to the statute. Congress charged the Commission to make policy in this area, and it provided a statutory standard that would allow the Commission to make policy—to decide, as a policy matter, under what circumstances a court can exercise discretion to reduce a sentence. The Commission has decided that courts should be permitted to consider changes in the law as part of a holistic determination of whether a set of circumstances qualify as "extraordinary and compelling." That approach is not the only policy choice it was permitted to make, but the Commission was permitted to make it, and the choice is consistent with the text, context, and history of 18 U.S.C. § 3582(c)(1)(A).

### a. Section 1B1.13(b)(6) is consistent with the text of 18 U.S.C. § 3582(c)(1)(A).

Congress enacted 18 U.S.C. § 3582(c)(1)(A) as part of the 1984 Sentencing Reform Act of 1984, and the text has remained unchanged. The meaning of the words at the time Congress enacted the Sentencing Reform

Act therefore control. *See Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2077 (2018) ("[O]ur job is to interpret the words consistent with their 'ordinary meaning . . . at the time Congress enacted the statute.'") (citation omitted). Then, as now, "[e]xtraordinary" meant "[o]ut of the ordinary; exceeding the usual, average, or normal measure or degree." *Extraordinary*, BLACK'S LAW DICTIONARY 527 (5th ed. 1979). The term "[e]xtraordinary circumstances" could encompass "[e]xtenuating circumstances," *Extraordinary Circumstances*, *id.*, which in turn describes circumstances that "render a . . . crime less . . . reprehensible than it would otherwise be," or that call for "reduce[d] . . . punishment," *Extenuating Circumstances*, *id.* at 524. "Compelling" meant "calling for examination, scrutiny, consideration, or thought." *Compelling*, WEBSTER'S THIRD NEW INT'L DICTIONARY 463 (1981). Together, "extraordinary and compelling" referred to circumstances that are beyond the ordinary and demand close attention—including those that tend to call for reduced punishment.

The words Congress chose were understood to be "comprehensive and flexible in meaning," *Extraordinary*, BLACK'S LAW DICTIONARY 527 (5th ed. 1979), and capable of encompassing a "combination of circumstances," *Extraordinary*, WEBSTER'S THIRD NEW INT'L DICTIONARY 807 (1981). They invite the sort of inquiry that the Sentencing Commission requires with

§ 1B1.13(b)(6): a holistic judgment that turns on the particulars of each case. *See Compelling Need*, BLACK'S LAW DICTIONARY 353 (11th ed. 2019) ("Generally, courts decide whether a compelling need is present based on the unique facts of each case."); *Brooker*, 976 F.3d at 237 (phrase provides "broad" and "very wide latitude"); *see generally* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 101 (2012) ("Without some indication to the contrary, general words . . . are to be accorded their full and fair scope. They are not to be arbitrarily limited. . . . [T]he presumed point of using general rules is to produce general coverage—not to leave room for courts to recognize ad hoc exceptions.").

Section 1B1.13(b)(6) fits comfortably within those "comprehensive and flexible" words. Only a sliver of the inmate population will ever qualify under (b)(6). As the Commission explained, fewer than 12% of all inmates will meet the 10-year requirement. Sentencing Guidelines for United States Courts, 88 Fed. Reg. at 28259. Far fewer are serving an "unusually long sentence" that is "gross[ly]" disproportionate to the sentence they would receive under current law. U.S.S.G. § 1B1.13(b)(6). For instance, the Commission estimates that merely 2,412 people—1.5% of the total inmate population—are serving stacked section 924(c) sentences like Black's. U.S. SENT'G COMM'N., *Estimate of the Impact of Selected Sections of S. 1014, The First Step Act*

*Implementation Act of 2021*, at 1 (Oct. 2021) ("2,412 offenders").[8] And even that small population of inmates does not automatically qualify. Instead, such prisoners must have served at least 10 years of their sentence, and courts must conclude that their individualized circumstances, viewed as a whole, together are "extraordinary." Those who clear each of these hurdles will, by definition, present circumstances that an "ordinary" or "average" case never would. *See Ordinary*, BLACK'S LAW DICTIONARY 989 (5th ed. 1979) (defining "[o]rdinary" as "belonging to . . . or characteristic of, the normal or average individual"). The Commission's case-specific approach tracks the case-specific nature of the words "extraordinary" and "compelling." *See United States v. Padgett*, -- F. Supp. 3d --, 2024 WL 676767 (N.D. Fla. Jan. 30, 2024), at *3 ("'Extraordinary' is an adjective addressing matters of degree, not kind.").

The government has only one textual argument: that the "ordinary practice" in federal sentencing is to apply new penalties prospectively, and that what is "ordinary" cannot be "extraordinary." R. 774, at 13-14. That argument, however, suffers from a basic logical flaw. What is "extraordinary

---

[8] As of the filing of this brief, there are 156,063 federal prisoners. FED. BUREAU OF PRISONS, *Population Statistics* (updated April 15, 2024), https://www.bop.gov/mobile/about/population_statistics.jsp.

and compelling" for these purposes is the *group* or confluence of numerous different factors, any one of which could in isolation be deemed "ordinary." For example, it is ordinary to get old. And it is ordinary to get sick. But age or health can combine with other "ordinary" factors (like serving a lawful sentence) to create a confluence of factors that even the government would concede constitute "extraordinary and compelling" circumstances. That is because the words "extraordinary" and "compelling" invite a context-dependent analysis that asks whether a combination of circumstances take a case out of the ordinary.

In context-specific inquiries like this one, it is a "persistent error in legal analysis to ask whether a" single circumstance "'by itself' passes some threshold—to put evidence in compartments and ask whether each compartment suffices." *United States v. Vaughn*, 62 F.4th 1071, 1072 (7th Cir. 2023). "[T]he whole is often greater than the sum of its parts—especially when the parts are viewed in isolation." *District of Columbia v. Wesby*, 583 U.S. 48, 60–61 (2018). Thus, the Supreme Court in *Wesby* reversed an appellate court in a probable-cause case for "view[ing] each fact" "in isolation," finding each insufficient on its own in a "divide-and-conquer analysis." *Id. Wesby*, this Court has explained, provides a "sharp" "remind[er]" to "all judges that evidence should *not* be compartmentalized."

*Vaughn*, 62 F.4th at 1072 (emphasis in original). "[N]o matter how the [extraordinary-and-compelling] threshold is defined, a combination of factors may move any given prisoner past it, even if one factor alone does not." *Id*. at 1073. It was eminently reasonable for the Commission to take the same approach.

### b. Section 1B1.13(b)(6) is consistent with the context of 18 U.S.C. § 3582(c)(1)(A).

Statutory context surrounding 18 U.S.C. § 3582(c)(1)(A) further supports the Commission's conclusion. Congress placed only one limit on the Commission's authority to describe "extraordinary and compelling reasons" for relief: "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t). Section 994(t) shows that Congress knew how to speak clearly when it wanted to exclude topics from consideration. *See Chen*, 48 F.4th at 1099. There is no basis to infer some other, implied limitation on what courts may consider. *See United States v. Johnson*, 529 U.S. 53, 58 (2000) ("When Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth.").

Section 994(t) also underscores Congress's expectation that the analysis would involve consideration of a *combination* of circumstances. Even when Congress expressly prohibited a consideration (rehabilitation), it chose not to do so categorically. Instead, Congress provided that "[r]ehabilitation . . . *alone*" cannot suffice. 28 U.S.C. § 994(t) (emphasis added). Unless the word "alone" has no meaning, Congress must have intended to permit consideration of rehabilitation alongside other factors. *See Brooker*, 976 F.3d at 237-38 (permitting consideration of rehabilitation when the defendant "does not rely *solely*" on it). So even though Congress was clear in its disdain for rehabilitation as a valid consideration when a sentence is imposed, *see Tapia v. United States*, 564 U.S. 319, 324-27 (2011), Congress still allowed courts to consider rehabilitation as part of the holistic determination of whether a particular case presented "extraordinary and compelling" circumstances when a defendant seeks a sentence reduction. To say the least, it would be odd to conclude that Congress intended implicitly to prohibit any and all consideration of changes in law even though it did not impose such a categorical bar with respect to the one factor, rehabilitation, that it explicitly identified.

In contrast to the government's position, the Commission's approach aligns with Section 994(t). Just as rehabilitation alone does not suffice,

section 1B1.13(b)(6) provides that nonretroactive changes in law alone do not suffice. Like Congress's approach in Section 994(t), § 1B1.13(b)(6) allows courts to consider such changes only when combined with other factors. And that is consistent with the meaning of "extraordinary and compelling," a phrase that invites a combination-focused analysis.

### c. Section 1B1.13(b)(6) comports with the history and purpose of 18 U.S.C. § 3582(c)(1)(A).

In 18 U.S.C. § 3582(c)(1)(A), Congress addressed the need for a "safety valve" for certain defendants. *See* S. Rep. No. 98-225, at 121, *as reprinted in* 1983 U.S.C.C.A.N. at 3304. Congress recognized in particular that "there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances . . . [including] cases in which other extraordinary and compelling circumstances justify a reduction of an *unusually long sentence.*" *Id.* at 55, *as reprinted in* 1983 U.S.C.C.A.N. at 3238 (emphasis added). Section 1B1.13(b)(6), which represents the Commission's careful fulfillment of Congress's direction to define "extraordinary and compelling," "fits seamlessly with the history and purpose of [§ 3582(c)(1)(A)]." *Ruvalcaba*, 26 F.4th at 26.

The government's arguments to the contrary rest on two erroneous contentions: first, that § 1B1.13(b)(6) resembles the old parole system that

Congress abolished in the Sentencing Reform Act; and second, that section 1B1.13(b)(6) invites the very sentencing disparities that the Sentencing Reform Act was designed to reduce. Neither argument has merit.

As to the first argument, judicial sentence reduction is nothing like parole. Congress in 1984 would not have thought judicial sentence reductions, even if based in part on a change in law, were akin to the parole system it was abolishing. Historical context leading up to the passage of the Sentencing Reform Act is informative. Under the old parole system, a person became eligible for parole after serving one-third of their imposed sentence, with the parole decision in the hands of an executive parole board that focused almost exclusively on rehabilitation.[9] Judicial sentence reduction is fundamentally different. As an initial matter, under section 3582(c)(1)(A) courts may not consider rehabilitation alone, but a showing of "extraordinary and compelling reasons." Moreover, discretionary sentence reduction keeps sentencing decisions in the judiciary (one of the overarching goals of the Sentencing Reform Act), and has "deep historical roots" that are distinct from parole. Cecelia Klingele, *Changing the Sentence Without Hiding the Truth:*

---

[9] For a general description of the federal parole system, see *United States v. Addonizio*, 442 U.S. 178 (1979).

*Judicial Sentence Modification as a Promising Method of Early Releas*e, 52 WM. & MARY L. REV. 465, 498 (2010).

Permitting the Commission to issue policy statements that guide the courts solves one of the problems that led Congress to create the Commission: the lack of uniform standards in the parole process. In 1984, Congress aimed to take questions of sentencing policy—at least those implicating uniform national standards—out of the hands of individual judges and place them in the hands of the Commission. *See, e.g.*, *Pepper v. United States*, 562 U.S. 476, 513 (2011) (Breyer, J., concurring in part and concurring in the judgment) ("[T]he Commission has comparatively greater ability to gather information, to consider a broader national picture, . . . and ultimately to write more coherent overall standards that reflect nationally uniform . . . sentencing policies."). Invalidating the Commission's reading would be a stark rejection of Congress's decision to grant the Commission the power to provide binding, "nationally uniform" standards in this context. *Id.*

In adopting section 1B1.13(b)(6), the Commission, far from disregarding the Sentencing Reform Act, specifically drew upon the Sentencing Reform Act and the role of section 3582(c)(1)(A)—a discretionary judicial sentence-reduction mechanism—within the larger Act. The reference in section 1B1.13(b)(6) to "unusually long sentences" comes straight from S.

Rep. No. 98-225, in which the Sentencing Reform Act's Senate drafters described the purpose of the proposed section 3582(c)(1)(A). That Report states that the provision would permit relief in "unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances"—not only "cases of severe illness" but also "cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence," including "some cases in which the sentencing guidelines for the offense of which the defend[ant] was convicted have been later amended to provide a shorter term of imprisonment." S. Rep. No. 98-225, at 55-56, *as reprinted in* 1983 U.S.C.C.A.N. at 3238-39; *see also* U.S.S.G. App. C, Amend. 814, Reason for Amendment (Nov. 1, 2023) (citing this language).

Indeed, section 3582(c)(1)(A) may have been essential to the Sentencing Reform Act's enactment. The Senate Report notes a concern by some members of Congress "who would retain parole on the ground that it was a valuable 'safety valve' designed to shorten lengthy sentences." S. Rep. No. 98-225, at 46-47 n.156, *as reprinted in* 1983 U.S.C.C.A.N. 3229-30. The same Report describes congressional testimony explaining that parole was "really unnecessary in order . . . to deal with that occasional case where, in a determinate sentencing scheme, an offender receives a sentence which turns

out to be manifestly unfair or 'wrong,' particularly in light of post sentence developments." *Id.* at 53-54 n.196, *as reprinted in* 1983 U.S.C.C.A.N. at 3236-37 (citing congressional testimony presented in 1979 by Judge Harold Tyler). Later, the Report explains that section 3582(c)(1)(A) would serve this purpose as a "safety valve" within the new sentencing scheme. *Id.* at 121, *as reprinted in* 1983 U.S.C.C.A.N. at 3304.

The government's argument based on the purported disparities resulting from the § 1B1.13(b)(6) is equally meritless. The language in section 1B1.13(b)(6) specifically reflects that it is a direct attempt to *eliminate* "gross disparit[ies]" through reduction of certain unusually long sentences where changed circumstances compel the court to reduce the sentence. Any claim by the government that § 1B1.13(b)(6) will increase such disparities flows not from the Commission's actions but instead from the government's own flawed and somewhat ironic logic. The Commission is seeking to reduce disparities created by mandatory-minimum sentences that defendants would not face today, when coupled with other individualized factors. These disparities were created not by Congress per se, but rather by prosecutors who chose to indict some defendants, in some cases, on multiple counts of Section 924(c).[10]

---

[10] See HUMAN RIGHTS WATCH, *An Offer You Can't Refuse, supra*, at 60. The disparities extended beyond mere sentence length, impacting different

Moreover, any argument over whether section 1B1.13(b)(6) produces more or less disparity is a policy disagreement; and Congress decided that the Sentencing Commission, not the Department of Justice, would make policy in this space. Ultimately, by prescribing the narrow circumstances in which relief is warranted, the Commission has furthered the essential goal of the Sentencing Reform Act to establish "nationally uniform" standards that will govern courts considering sentence-reduction motions around the country.

### 3. Section 1B1.13(b)(6) is not contrary to amended 18 U.S.C. § 924(c).

The district court never identified any statute other than section 3582(c)(1)(A) that it thought contrary to § 1B1.13(b)(6). Nor did *Thacker*, although *Thacker's* reading of "extraordinary" seems to have been influenced by the fear that defendants might make an "end run" around the limit placed by Congress on amended section 924(c). 4 F.4th at 573. The government's briefing before the district court arguably took up that theme, and for the sake of completeness, Black will respond, although the district court's opinion did

---

demographics at different rates. *See* U.S. SENT'G COMM'N, *Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System*, *supra*, at 274 (reporting that "Black" and "male" "offenders were convicted of an offense under Section 924(c), were subject to the mandatory minimum penalty at sentencing, and were convicted of multiple counts of an offense under Section 924(c), at higher rates than offenders with other demographic characteristics").

not rely on the government's claim that § 1B1.13(b)(6) is contrary to the section 924(c) amendment.

The government's argument relies on section 403 of the First Step Act, which states that the Act's prohibition on section 924(c) stacking applies "to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of the enactment." Pub. L. No. 115-391, § 403(b), 132 Stat. at 5222. In the government's view, that provision reflects an implicit decision to prohibit any consideration of the statutory change for any other purpose.

Section 1B1.13(b)(6) is not contrary to amended section 924(c). A policy statement is contrary to a statute only if the two texts cannot stand side by side. The proper reconciliation of statutory provisions rests upon the general doctrine approved by the Supreme Court in *Morton v. Mancari*, 417 U.S. 535 (1974). *Morton* confirmed that it is a "cardinal rule" that "repeals by implication are not favored." 417 U.S. at 549. "In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." *Id.* at 540. Expanding on this "cardinal rule," *Morton* explained that, "The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence,

it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Id*. at 541. Only when there is an "irreconcilable conflict" may a court declare that one statute has impliedly repealed another. *Branch v. Smith*, 538 U.S. 254, 273 (2003).

*Branch* gives some idea of how difficult it is to establish an irreconcilable conflict. "We have not found *any* implied repeal of a statute since 1975. . . . And outside the antitrust context, we appear not to have found an implied repeal of a statute since 1917." *Id.* at 293 (O'Connor, J., concurring in part) (emphasis in opinion).

Considered in this framework, the government's argument lacks merit. Section 403 nowhere mentions sentence reductions, much less imposes any explicit limitations on the Commission's ability to define what qualifies as "extraordinary and compelling." The Supreme Court has repeatedly rejected exactly this kind of effort to limit sentencing or resentencing statutes based on silent implications from Congress. Three cases illustrate this point.

In *Rodriguez v. United States*, 480 U.S. 522 (1987), the government argued a trial court had improperly suspended a sentence under the Probation Act because a new statute mandated a two-year sentence for felonies committed while on bail. According to the government, though the new law did not speak to its effects on the Probation Act, it nonetheless

"superseded" the Probation Act, which had "long" authorized courts to suspend sentences. 480 U.S. at 522-23. The court of appeals concluded that the newer law impliedly limited that power on the ground that the purpose of the new law would otherwise be thwarted. *Id.* at 525. The Supreme Court rejected that view. It explained that "[n]othing in the language of" the new statute "explicitly divest[ed]" courts of their authority to suspend sentences. *Id.* at 524. The Court found it "most impermissibl[e]" to rely on the new law's supposed "broad purposes" to silently limit the Probation Act, for "no legislation pursues its purposes at all costs." *Id.* at 525-26.

The Supreme Court unanimously rejected a similar argument in *Dean v. United States*, 581 U.S. 62 (2017). There, the government argued that section 924(c)'s mandatory minimums prohibited courts from exercising their general discretion to consider the aggregate length of a defendant's sentence when fashioning sentences for the non-section 924(c) counts in a multi-count indictment. *Id.* at 64, 68. The Court refused to "read" an unstated "limitation into § 924(c)." 581 U.S. at 69-70. Section 924(c) "says nothing about" the length of other sentences, "much less about what information a court may consider" when determining those sentences. *Id.* at 69. "Congress ha[d] shown that it knows how to direct sentencing practices in express terms"—by

enacting a different statute that "*actually* say[s]" "what the Government reads § 924(c) to say." 581 U.S. at 70 (emphasis in original).

The Court recently applied a similar principle in *Concepcion v. United States*, 597 U.S. 481 (2022), rejecting the government's argument that Section 404 of the First Step Act limited a court's broad discretion to consider any information (including non-retroactive changes in law) during a sentence modification proceeding. 597 U.S. at 494-98. That "discretion is bounded only when Congress or the Constitution expressly limits" it, the Court noted, and "Congress is not shy about placing such limits," *id.* at 491, 494-95 (collecting examples of "express" limits). But "[n]othing in . . . the First Step Act" placed such a limit, because nothing in its terms "prohibit[s] district courts from considering any arguments in favor of, or against, sentence modification." *Id.* at 495-96. "Had Congress intended to constrain district courts" during sentence modification, it "would have written" that limit into Section 404. *Id.* at 497.

So too here. Congress knows how to restrict the meaning of "extraordinary and compelling." It did precisely that in section 994(t) when it declared that rehabilitation alone is not an extraordinary and compelling reason. But the First Step Act "says nothing about" what justifies a sentence reduction under the compassionate release statute, "much less about what

information a court may consider" in a compassionate release analysis. *Dean*, 581 U.S. at 69. Inferring from the First Step Act "that district courts cannot consider non-retroactive changes in sentencing law would be to create a categorical bar against a particular factor, which Congress itself has not done." *Chen*, 48 F.4th at 1098.

The government has also argued that § 1B1.13(b)(6) conflicts with the supposed intent of the 2018 Congress because it would "override" the non-retroactivity "directive" in the First Step Act. The government's position appears to be that § 1B1.13(b)(6) grants the same remedy—retroactive application of a sentencing law—that the First Step Act withheld. That argument fundamentally misconceives both § 1B1.13(b)(6) and the First Step Act. Contrary to the government's premise, § 1B1.13(b)(6) does not treat a change in law alone as sufficient to justify sentence relief, nor is it a "retroactive" application of the changes in the First Step Act. As the First Circuit explained in a decision before the Commission's 2023 policy statement, this sort of "critique knocks down a straw man." *Ruvalcaba*, 26 F.4th at 27. A retroactive provision would make every defendant who commits a covered offense automatically eligible for relief. Section 1B1.13(b)(6) does no such thing. Rather, § 1B1.13(b)(6) requires an eligibility analysis based on a discretionary, case-by-case determination. Section

1B1.13(b)(6) therefore occupies the opposite pole from a rule automatically establishing relief for any prisoner with a "stacked" sentence. Even when a defendant has (1) served over ten years; (2) established he is serving an "unusually long" sentence; and (3) shown that he is facing a "gross disparity," the district court *still* has discretion to reject eligibility if it finds that the defendant's individualized circumstances are not extraordinary. U.S.S.G. § 1B1.13(b)(6).

In sum, the government's First Step Act argument depends on several untenable assumptions, all drawn from congressional silence. It infers from amended section 924(c) words that are not present—imposing a silent limit on what courts adjudicating sentence reduction motions may consider. It assumes that this imagined limit not only bars consideration of changes in law alone, but also prevents them from *ever* being considered in *any* combination of circumstances—even though Congress itself has never gone so far even when it *did* limit a consideration (rehabilitation) in 28 U.S.C. § 994(t). And the government's argument posits that Congress created this silent rule for *all* changes of law, even though the enacted text merely withholds retroactive application from section 924(c) stacking. If Congress wants to limit the Commission's discretion, it may do so, but Congress has not done so through the First Step Act, and courts err when they "elaborate

unprovided-for exceptions to a text" or "supply words . . . that have been omitted." SCALIA & GARNER, *supra*, at 93.

## CONCLUSION

The Court should vacate the district court's order denying Black's motion for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and it should remand for further proceedings.

DATED: April 15, 2024

Respectfully submitted,

*/s/ William H. Theis*

William H. Theis
2027 E. 17th St.
Lawrence, KS 66044
(847) 275-3080
william_theis@att.net

## CERTIFICATE OF COMPLIANCE WITH
## RULE 32(A)(7)

The undersigned, counsel for Appellant, certifies that this brief complies with the type-volume limitations of Rule 32(a)(7), in that it contains 12,267 words, in a 13-point Century Schoolbook font. This certification is based on the word count of Microsoft Word, the word processing program used in preparing this opening brief.

Dated April 15, 2024.

Respectfully submitted,


*/s/ William H. Theis*
William H. Theis
*Attorney for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE WITH
## CIRCUIT RULE 30

The undersigned, counsel for Appellant, hereby states that all of

the materials required by Circuit Rules 30(a) and 30(b) are included in

the Appendix, filed and bound herewith.

Dated April 15, 2024.

Respectfully submitted,

*/s/ William H. Theis*
William H. Theis
*Attorney for Defendant-Appellant*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on April 15, 2024, he electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals by using the CM/ECF system. He further certifies that all participants in the case are registered CM/ECF users and that all service will be accomplished by the CM/ECF system.

Respectfully submitted,

*/s/ William H. Theis*
William H. Theis
*Attorney for Defendant-Appellant*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| United States of America, | |
|     *Plaintiff,* | No. 05 CR 70-4 |
| v. | Judge Lindsay C. Jenkins |
| Eural Black, | |
|     *Defendant.* | |

**MEMORANDUM OPINION AND ORDER**

Eural Black, a Chicago police officer, was convicted of conspiracy and firearms offenses in 2007. *United States v. Black*, 999 F.3d 1071, 1072 (7th Cir. 2021). He was sentenced to a total of 40 years in prison: 10 years for the conspiracy convictions, plus consecutive 5- and 25-year terms for carrying a firearm in furtherance of a crime of violence or drug trafficking crime. 18 U.S.C. § 924(c). He unsuccessfully sought relief from this sentence on direct appeal, in postconviction proceedings, and in a motion for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A).

Black now moves for a reduction of sentence again. [Dkt. 769.][1] He argues that although the Seventh Circuit has held that circumstances like his cannot constitute "extraordinary and compelling reasons" to reduce his sentence under § 3852(c)(1)(A), the U.S. Sentencing Commission's contrary interpretation of that statutory phrase abrogates those Seventh Circuit cases. A federal agency's interpretation of a statute can trump a court's earlier interpretation in some circumstances, but they are not present here. Seventh Circuit precedent requires the Court to deny Black's motion.

---

[1]     The motions for leave to file supplemental authority are granted. [Dkt. 777, 778, 779.]

A.1

## I.     Background

In 2007, a jury convicted Black of conspiracies to commit racketeering, drug distribution, and robbery, plus two counts of carrying a firearm in furtherance of a crime of violence or a drug trafficking crime, in violation of 18 U.S.C. § 924(c). *Black*, 999 F.3d at 1072. This Court[2] imposed the 10-year mandatory minimum on the conspiracy convictions and the then-applicable 5- and 25-year mandatory minimums on the § 924(c) convictions. *Id.* at 1072–73. As required by the statute, the § 924(c) sentences ran consecutively to the other sentences. *See* § 924(c)(1)(D)(ii). Black's convictions and 40-year sentence were upheld on appeal. *United States v. Haynes*, 582 F.3d 686, 697, 713 (7th Cir. 2009), *abrogated on other grounds by United States v. Vizcarra*, 668 F.3d 516, 521 (7th Cir. 2012). Black moved for postconviction relief under 28 U.S.C. § 2255, alleging ineffective assistance of counsel, but his motion was denied. *United States v. Black*, 2011 WL 6058584 (N.D. Ill. Dec. 6, 2011). He received permission to file a successive § 2255 motion to argue that his § 924(c) convictions were illegal under *Johnson v. United States*, 576 U.S. 591 (2015), but this Court denied his motion, *United States v. Black*, 2020 WL 1445606 (N.D. Ill. Mar. 25, 2020).[3]

In 2018, Congress enacted the First Step Act, which contains two provisions relevant to the present motion. An amendment to 18 U.S.C. § 3582(c)(1)(A), the

---

[2]     Judge Guzmán presided over all proceedings prior to Black's current motion.

[3]     *Johnson* held unconstitutionally vague a statute analogous to § 924(c)(3)(B), which provides one definition of "crime of violence" under § 924(c). *Johnson* had no impact on § 924(c) convictions predicated on drug trafficking crimes, however, and Black's convictions rested on both crimes of violence and drug trafficking crimes, so *Johnson* did not call their validity into question. *See United States v. States*, 72 F.4th 778, 782 & n.1 (7th Cir. 2023).

compassionate release statute,[4] permitted a defendant to move for a reduced sentence because of "extraordinary and compelling reasons"; previously, only the Director of the Bureau of Prisons could move for a sentence reduction. Black made use of that new opportunity and moved for a reduction of sentence, arguing that the combination of his cancer treatment and the COVID-19 pandemic constituted "extraordinary and compelling reasons" why he should be released early. *Black*, 999 F.3d at 1072.

This Court denied the motion, but the Seventh Circuit vacated and remanded. *Id.* In its decision, the Seventh Circuit discussed the other relevant provision of the First Step Act, the amendment to § 924(c)'s penalties. Under the amendment, a second § 924(c) conviction carries a 25-year minimum sentence only if it is committed after a prior § 924(c) conviction has become final. § 924(c)(1)(C). That is, if Black were sentenced today, he would face two 5-year mandatory minimum terms, not the 5- and 25-year terms that applied in 2007. The Seventh Circuit held that Black's sentence, relative to the current statutory scheme, could be relevant to a court considering a motion for a reduced sentence:

> As the Fourth Circuit explained in a similar case: "Not all defendants convicted under § 924(c) should receive new sentences, but courts should be empowered to relieve some defendants of those sentences on a case by case basis." Other circuits have agreed. We agree that such discretion is inherent in the compassionate release statute and process.

*Black*, 999 F.3d at 1075–76 (cleaned up). On remand, this Court noted that Black's cancer treatment had ended and he had been vaccinated against COVID-19, leaving

---

[4]     Black points out that the proper term is "reduction of sentence," not "compassionate release," because § 3582(c)(1)(A) "is not limited to cases involving terminal illness, advanced disability, or the like." [Dkt. 769 at 5 n.3.] The Seventh Circuit uses the term "compassionate release," so while the Court takes Black's point, it uses the two terms interchangeably.

only the disparity between his § 924(c) sentences and the new sentencing regime as a justification for reducing his sentence. [Dkt. 758 at 2.] An intervening Seventh Circuit decision, *United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021), foreclosed that argument, so the Court denied Black's § 3582(c)(1)(A) motion. [Dkt. 758 at 1–2.]

*Thacker* was not the last word. The U.S. Sentencing Commission, the agency tasked with promulgating policy statements "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples," 18 U.S.C. § 994(t), issued a policy statement amending U.S.S.G. § 1B1.13 to provide that a defendant serving an unusually long sentence relative to current law could, in some circumstances, show extraordinary and compelling reasons for a sentence reduction because of that disparity. The new version of § 1B1.13 took effect on November 1, 2023.

Black again moves for a reduction of sentence, arguing that the Sentencing Commission's new policy statement abrogates *Thacker* and permits the Court to find that the disparity between the sentence Black is serving on his § 924(c) convictions and the penalties he would be subject to today is an extraordinary and compelling reason that his sentence should be reduced. [Dkt. 769.] The government responds that *Thacker* bars the Court from finding that a nonretroactive sentencing amendment is a compelling and unusual reason to reduce a sentence, despite the Sentencing Commission's contrary policy statement. [Dkt. 774.]

## II.    Standard of Review

"A district court may grant a motion for a reduced sentence if (1) 'extraordinary and compelling reasons warrant such a reduction,' (2) the reduction is 'consistent with

4

A.4

applicable policy statements issued by the Sentencing Commission,' and (3) the reduction is appropriate in light of the [18 U.S.C. § 3553(a)] sentencing factors." *United States v. Williams*, 65 F.4th 343, 346 (7th Cir. 2023) (quoting 18 U.S.C. § 3582(c)(1)(A)); *cf. Thacker*, 4 F.4th at 576 (framing the analysis as having two steps, with *Williams*'s items (1) and (2) constituting step one).

## III. Analysis

Whether the Court has the power to find that Black presents extraordinary and compelling reasons that his sentence should be reduced raises questions of administrative law and statutory interpretation. The Court begins with the relevant statutory and Sentencing Guidelines provisions. It then analyzes how the Sentencing Commission's recent policy statement fits into the compassionate release framework and how much weight the Court must give to that policy statement. Finally, the Court explains why Seventh Circuit precedent precludes it from finding that the sentence Black is serving on his § 924(c) convictions is an extraordinary and compelling reason that his sentence should be reduced, despite the Commission's view that the Court can make that finding.

### A. Statutory and Sentencing Guidelines Provisions

#### 1. 18 U.S.C. § 924(c)

Black's convictions include two counts of carrying a firearm during and in relation to a crime of violence or drug trafficking crime in violation of 18 U.S.C. § 924(c). Section 924(c) convictions carry mandatory minimum penalties that must run consecutively to other sentences. At the time of Black's conviction, the first conviction mandated a 5-year sentence, and any subsequent conviction required a 25-

year sentence. *See Thacker*, 4 F.4th at 572. "The First Step Act changed that. An enhanced sentence for a second or subsequent conviction under § 924(c) now applies only when the first § 924(c) conviction arises from a separate case and becomes final before the second conviction." *Id.*; *see* § 924(c)(1)(C). The First Step Act did not, however, give this amendment to § 924(c) retroactive effect. *Thacker*, 4 F.4th at 573. Thus, while Black would be subject to only a 5-year mandatory minimum sentence on his second § 924(c) conviction if he were sentenced under the current version of the statute, the First Step Act does not, by its terms, entitle him to resentencing under the reduced penalties now in effect.

### 2.    18 U.S.C. § 3582(c)(1)(A)

Under the Sentencing Reform Act of 1984, Congress abolished federal parole, meaning that "when a defendant is sentenced to prison he generally must serve the great bulk of his assigned term." *United States v. Peoples*, 41 F.4th 837, 841 (7th Cir. 2022) (quoting *United States v. Haymond*, 139 S. Ct. 2369, 2382 (2019)). Instead of parole, the vehicle for early release of a federal prisoner is 18 U.S.C. § 3582(c)(1)(A). *See id.* Until 2018, only the Director of the Bureau of Prisons could seek to reduce a sentence pursuant to § 3582(c)(1)(A). *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to request a reduced sentence and empowered courts to reduce a defendant's sentence after the Director is given 30 days to make a recommendation. *Id.* On such a motion, the court "may reduce the term of imprisonment ..., after considering the factors set forth in [18 U.S.C. § 3553(a)] if it finds that ... extraordinary and compelling reasons warrant

such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A).

In *Thacker*, the Seventh Circuit held that Congress's judgment not to make the amendment to § 924(c) retroactive meant that disparities in sentences between defendants sentenced under the old and new penalty schemes could not constitute or contribute to a finding of extraordinary and unusual reasons warranting early release. 4 F.4th at 576 ("[A] prisoner must identify an 'extraordinary and compelling' reason warranting a sentence reduction, but that reason cannot include, whether alone or in combination with other factors, consideration of the First Step Act's amendment to § 924(c)."). The Seventh Circuit reiterated this holding in subsequent opinions. *See, e.g.*, *United States v. Brock*, 39 F.4th 462, 465 (7th Cir. 2022); *United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022); *cf. Williams*, 65 F.4th at 346–49 (surveying circuit disagreement but declining to revisit *Thacker*'s holding).

### 3.  U.S.S.G. § 1B1.13

Congress directed the Sentencing Commission, in policy statements, to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 18 U.S.C. § 994(t). The Commission did so in U.S.S.G. § 1B1.13, but because only the Director could move for a reduction of sentence until 2018, the policy statement did not apply to a defendant's motion. *Gunn*, 980 F.3d at 1180 ("Section 1B1.13 addresses motions and determinations of the Director, not motions by prisoners. In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to [a defendant's] request."). The Commission later amended § 1B1.13 to account for the

fact that defendants can now move for reduced sentence pursuant to § 3582(c)(1)(A). When Congress did not act to prevent the amendment from becoming operative, the amended § 1B1.13 took effect on November 1, 2023.

In addition to providing a policy statement applicable to a defendant's motion for reduced sentence, the Commission added the following provisions to § 1B1.13:

> (b) Extraordinary and Compelling Reasons.—Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
> > …
> >
> > (6) Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.
>
> (c) Limitation on Changes in Law.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

The text of the amended § 1B1.13 could not be clearer: The Commission has rejected *Thacker*'s holding that nonretroactive sentencing amendments, including to § 924(c), cannot constitute or contribute to extraordinary and compelling reasons to reduce a defendant's sentence under § 3582(c)(1)(A). The Commission's commentary

accompanying its announcement of these revisions makes the point explicitly. *See* 85 Fed. Reg. 28254, 28258–59 (May 3, 2023) (noting the circuit split by citing cases including *King*, which applied the *Thacker* principle, and "agree[ing] with the circuits that authorize a district court to consider non-retroactive changes in the law as extraordinary and compelling circumstances warranting a sentence reduction").

There is no doubt that Black falls within the scope of the amended version of § 1B1.13(b)(6), which explains that courts can find that the disproportionate length of a sentence imposed under an old sentencing scheme is an extraordinary and compelling reason to reduce a defendant's sentence. [*Cf.* Dkt. 774 at 6–8.] The question for the Court is whether the Sentencing Commission's or the Seventh Circuit's interpretation of "extraordinary and unusual" prevails.

### B.    Application

Determining whether the Sentencing Commission's view of extraordinary and unusual reasons abrogates the Seventh Circuit's opposing interpretation depends on whether *Thacker* was interpreting—or at least relying on—a guideline, or construing § 3582(c)(1)(A). If the former, then the Commission's view prevails. *See Braxton v. United States*, 500 U.S. 344, 348 (1991) ("The Guidelines are of course implemented by the courts, so in charging the Commission 'periodically to review and revise' the Guidelines, Congress necessarily contemplated that the Commission would periodically review the work of the courts, and would make whatever clarifying revisions to the Guidelines conflicting judicial decisions might suggest." (cleaned up)).

If the latter, then the Commission's interpretation still might win out, but it is not a foregone conclusion. Statutory interpretation by the Commission receives

*Chevron* deference, *see, e.g.*, *United States v. Santoyo*, 146 F.3d 519, 524–25 (7th Cir. 1998), including if a court has previously construed the statute contrary to how the agency interprets it, *see Nat'l Cable & Telecom. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982–83 (2005). But courts do not defer if the statute leaves no gap to fill or if the agency interprets the statute unreasonably. *Cook County v. Wolf*, 962 F.3d 208, 221 (7th Cir. 2020).[5]

### 1. Whether *Thacker* Interpreted the Guideline or the Statute

The first question is whether the *Thacker* line of cases held that a nonretroactive sentencing amendment cannot constitute an extraordinary and compelling reason for a sentence reduction based on the compassionate release statute or a provision of the Sentencing Guidelines Manual. Black argues that the Seventh Circuit hewed closely enough to the old version of U.S.S.G. § 1B1.13 that the Sentencing Commission's amendment displaces those decisions. [Dkt. 769 at 11.]

The key opinion in Black's view is *Gunn*. He reads that decision as follows:

> In [*Gunn*], the Seventh Circuit observed that section 1B1.13 applied only when the government initiated the request. Nonetheless, *Gunn* allowed that, for defense requests, the court could grant relief if it found an extraordinary and compelling reason. However, since this effort would not be directly rooted in the guidelines, the courts should sparingly exercise that discretion and hew closely to the guideline, even though it was not authoritative for defense requests. In practice, the courts were confined, at least in the Seventh Circuit, to cases in which the defendant had serious health problems that would be exacerbated by remaining in prison during the pandemic.

---

[5]     As Black notes, the Supreme Court is considering whether to overrule or revise the *Chevron* framework [Dkt. 776 at 4], but the *Chevron* line of cases remains binding on this Court unless and until the Supreme Court says otherwise. *Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016) ("It is this Court's prerogative alone to overrule one of its precedents." (cleaned up)).

[*Id.* (footnote omitted).] He reads *Thacker* to support his interpretation of *Gunn*, arguing that when it distinguished "a change in section 924(c)" from "a defendant's health situation (a recognized basis in the 2018 version of section 1B1.13)," *Thacker* "restrained district courts from venturing much beyond the sentencing guideline in place at the time; but it said nothing about the Commission's power to revise the guideline and to declare what are extraordinary and compelling reasons, a charge placed by Congress on the Commission." [*Id.* at 12–13.] On Black's account, when the Commission amended § 1B1.13, it authoritatively resolved the circuit split against *Thacker*, meaning that "*Thacker* has no binding effect on this Court, just as if the Seventh Circuit itself had overruled *Thacker*." [Dkt. 776 at 2.]

The Court reads Seventh Circuit precedent differently. In its view, although *Gunn*, *Thacker*, and other compassionate release cases discussed the pre-amendment version of § 1B1.13, the only authority those decisions relied on was the statute, § 3582(c)(1)(A). In *Gunn*, the Seventh Circuit reviewed the denial of a motion for reduction of sentence filed by the defendant. It held that the old § 1B1.13 did not apply because it "addresse[d] motions and determinations of the Director, not motions by prisoners," so "the Sentencing Commission ha[d] not yet issued a policy statement 'applicable' to Gunn's request." 980 F.3d at 1180. In the absence of such a policy statement, *Gunn* continued, "the trailing paragraph of § 3582(c)(1)(A)[6] does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement. 'Consistent with' differs from 'authorized by.'" *Id.* The Seventh

---

[6] The trailing paragraph reads: "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A).

Circuit rejected the argument that not applying § 1B1.13 to motions by defendants would "creat[e] a sort of Wild West in court, with every district judge having an idiosyncratic release policy," because "[t]he statute itself sets the standard: only 'extraordinary and compelling reasons' justify the release of a prisoner who is outside the scope of § 3582(c)(1)(A)(ii)." *Id.* Thus, *Gunn* held that in the absence of applicable guidance from the Commission, the statute alone controls district courts' discretion.

True, as Black points out, *Gunn* made observations about the likely interaction between the inapplicable § 1B1.13 and district courts' rulings on compassionate release motions. [Dkt. 769 at 11; Dkt. 776 at 6.] *Gunn* noted that "[t]he substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons,'" and that "a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused. In this way the Commission's analysis can guide discretion without being conclusive." 980 F.3d at 1180. Further, the amended statute "gives the Director at least 30 days to articulate the Bureau of Prisons' decision and rationale," which might be help determine "whether some novel 'extraordinary and compelling reason' exists." *Id.* Thus, the Seventh Circuit "expect[ed] that district judges [would] give the Director's analysis substantial weight, even though under the First Step Act the Director's views are not controlling." *Id.* Black suggests that these passages of *Gunn* mean that the Seventh Circuit was telling district courts that they "should sparingly exercise that discretion and hew closely to [§ 1B1.13]." [Dkt. 769 at 11.] Further, he submits that *Gunn* "cautioned that district courts should not stray

12

A.12

too far from section 1B1.13" and indicated that "[i]f a court strays too far from section 1B1.13, it could be found to have abused its discretion." [Dkt. 776 at 6.]

This reading of *Gunn* is possible, but the Court does not think it is best because the opinion's context cuts in the opposite direction. The district court in *Gunn* had mistakenly concluded that its discretion was limited by § 1B1.13, and the Seventh Circuit remanded for the district court to exercise the proper scope of its discretion. In doing so, the Seventh Circuit attempted to reassure the government that its holding would not produce a Wild West environment because the inapplicable § 1B1.13 factors and the views of the Director could help guide district courts in interpreting the statutory phrase "extraordinary and compelling." 980 F.3d at 1180. Given the posture, these passages are best read as predicting that district judges would be unlikely to push the limits of their discretion in the face of contrary views of the Commission and the Director, and appellate review—while deferential—would act as a backstop against exercises of discretion that went too far. *Id.* But in all these statements—including hoping that the Commission would issue an applicable policy statement—*Gunn* was clear that what checks district courts' discretion is the statute alone. *Id.* at 1180–81 ("District judges must operate under the statutory criteria— 'extraordinary and compelling reasons'—subject to deferential appellate review.").

In any event, *Gunn*'s predictions about what district courts might do in future cases when faced with unknown facts and arguments are dicta, and "[n]o court … is obliged to treat dictum of another court … as binding precedent." *Green Plains Trade Grp., LLC v. Archer Daniels Midland Co.*, 90 F.4th 919, 928 n.9 (7th Cir. 2024)

(quotation omitted). *Gunn* did not grapple with the question of what role the Commission's guidance plays in determining the outer boundary of a district court's statutory discretion, so the Court will rely on the subsequent decisions that have engaged with the limits of statutory discretion over *Gunn*'s predictions. *Cf. TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) ("[A] federal court may resolve only a real controversy with real impact on real persons." (cleaned up)).

*Black* confirmed that district courts' discretion to find extraordinary and compelling circumstances is "broader" than the factors enumerated in the old version of § 1B1.13. 999 F.3d at 1074 (citing *Gunn* for the proposition that a "district court's discretion may be guided, but is not curtailed, by U.S.S.G. § 1B1.13"). *Williams*'s three-step test—which separates the requirement that a defendant meet the statutory definition of "extraordinary and compelling reasons" and the requirement that the exercise of discretion be consistent with applicable Commission policy statements, 65 F.4th at 346—bolsters this understanding because when there is no applicable policy statement, only the statute governs, *see Gunn*, 980 F.3d at 1180 ("Any decision is 'consistent with' a nonexistent policy statement."). Finally, *Thacker* expressly noted that there was no applicable policy statement before construing the statutory language to prohibit the consideration of a nonretroactive statutory amendment. 4 F.4th at 573–74 ("[U]ntil the Sentencing Commission updates its policy statement to reflect prisoner-initiated compassionate release motions, district courts have broad discretion to determine what else may constitute 'extraordinary and compelling reasons' warranting a sentence reduction. But the discretionary

authority conferred by § 3582(c)(1)(A) only goes so far."), 576 (holding that an "extraordinary and compelling" reason "cannot include, whether alone or in combination, consideration of the First Step Act's amendment to § 924(c)").

Thus, although *Gunn*'s dicta suggested that district courts would, in practice, look to the pre-amendment version of U.S.S.G. § 1B1.13 to help decide whether a defendant presented extraordinary and compelling reasons for a sentence reduction, subsequent Seventh Circuit cases have interpreted the statutory language without regard to the content of that policy statement. Because these decisions did not depend on the Commission's policy statement, the amendment to § 1B1.13 does not by itself abrogate those decisions. Instead, the question is whether the Commission's statutory interpretation overrides the Seventh Circuit's; the Court turns to that question next.

### 2. Whether the Statute Is Ambiguous

An agency's interpretation of a statute can supersede a court's prior interpretation under the *Chevron* framework if the agency is tasked with interpreting that statute and Congress has left a gap for the agency to fill. *Brand X*, 545 U.S. at 982–83. Black argues that Congress has delegated the interpretation of "extraordinary and compelling reasons" in § 3582(c)(1)(A) to the Sentencing Commission and that the judiciary must defer to the Commission's interpretation of that phrase. [Dkt. 776 at 4–6; *see id.* at 7 ("*Thacker* did not hold that section 3582 is unambiguous and contains no gap for the Commission to fill.").] The Court agrees.

Congress directed the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 18 U.S.C. § 994(t). Except specifying

15

that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason," *id.*, "Congress has provided little statutory guidance," *Williams*, 65 F.4th at 346 (citation omitted). Black argues that the statutory term has "little discernible content" and is not otherwise defined in the U.S. Code [Dkt. 774 at 5], which supports finding that "extraordinary and compelling" is ambiguous. *City of Arlington v. F.C.C.*, 569 U.S. 290, 296 (2013) ("Congress knows to speak in plain terms when it wishes to circumscribe, and in capacious terms when it wishes to enlarge, agency discretion.").

The Court concludes that "extraordinary and compelling" is ambiguous, so the Seventh Circuit's interpretation of that term does not prevent the Commission from construing that term differently. *See Brand X*, 545 U.S. at 982 ("A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion."). Instead, at *Chevron* step two, the Court must ask whether the Commission's policy statement "is a 'reasonable interpretation' of the enacted text" of § 3582(c)(1)(A). *Mayo Found. for Med. Educ. & Rsch. v. United States*, 562 U.S. 44, 48 (quoting *Chevron U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 844 (1984)).

### 3. Whether the Commission's Interpretation Is Reasonable

There are several grounds upon which Court can find that an agency's interpretation of a statute unreasonable, including that "the agency's reading disregards the statutory context." *See Cook County*, 962 F.3d at 226–27 (citing *Michigan v. EPA*, 576 U.S. 743, 753–54 (2015)). [*See* Dkt. 774 at 10–13 (making a

16

A.16

similar argument).][7] Black argues that the *Thacker*'s reading of § 3582(c)(1)(A) is, at most, "one possible interpretation of the statutory language," so the Commission's construction controls at *Chevron* step two. [Dkt. 776 at 9.] The Court reads Seventh Circuit precedent to forbid interpreting § 3582(c)(1)(A) to permit a nonretroactive sentencing amendment to constitute or contribute to "extraordinary and compelling reasons" for a sentence reduction, so the Court is bound to reject Black's argument.

*Thacker* and its progeny interpreted § 3582(c)(1)(A) to preclude a district court from finding that the § 924(c) amendments constitute extraordinary and compelling circumstances warranting a sentencing reduction. The language of those decisions indicates that the Seventh Circuit would reject the Commission's policy statement as unreasonable to the extent it purports to allow such an amendment to constitute extraordinary and compelling reasons. *Thacker* explained that although district courts' discretion is broad, "the discretionary sentencing authority *conferred by § 3582(c)(1)(A)* does not permit" sentencing reductions "without a district court finding some independent 'extraordinary and compelling' reason" besides the amendment to § 924(c). 4 F.4th at 575 (emphasis added). It then reviewed the same circuit split the Sentencing Commission confronted and concluded that a retroactive sentencing amendment categorically cannot be an "extraordinary and compelling" reason for a sentencing reduction. *Id.* at 575–76.

---

[7] Black phrases the inquiry, as *Chevron* did, as whether a policy statement is "arbitrary, capricious, or manifestly contrary to the statute." [Dkt. 776 at 3 (quoting *Chevron*, 467 U.S. at 843–44); *id.* at 9.] The Court takes this to be the same substantive standard as the Supreme Court applied in *Mayo Foundation* and the Seventh Circuit applied in *Cook County*.

Part of the Seventh Circuit's reasoning was that statutory amendments ordinarily apply only prospectively, so any disparities produced by the amendment to § 924(c) are not "extraordinary," and treating them as such would conflict with the sentencing framework Congress enacted. *Thacker* explained that § 3582(c)(1)(A)

> cannot be used to effect a sentencing reduction at odds with Congress's express determination … that the amendment to § 924(c)'s sentencing structure apply only prospectively. To conclude otherwise would allow a federal prisoner to invoke the more general § 3582(c) to upend the clear and precise limitation Congress imposed on the effective date of the … amendment to § 924(c). Put another way, there is nothing 'extraordinary' about leaving untouched the exact penalties that Congress prescribed and that a district court imposed for particular violations of a statute.

*Id.* at 574 (citations omitted)); *accord Brock*, 39 F.4th at 465 (reiterating these points). *King* described the holding of *Thacker* and *Brock* as, "When deciding whether 'extraordinary and compelling reasons' justify a prisoner's compassionate release, judges *must not rely* on non-retroactive statutory changes or new judicial decisions." 40 F.4th at 595 (emphasis added and citations omitted) (adding that "There's nothing 'extraordinary' about new statutes or caselaw …."). *Thacker* also explained that treating sentencing disparities based on nonretroactive amendments to statutes would open the door requests for reduced sentences "on the basis that the prescribed sentence is too long, rests on a misguided view of the purposes of sentencing, reflects an outdated legislative choice by Congress, and the like," but such rationales "cannot supply an extraordinary and compelling reason to reduce a lawful sentence" without "offend[ing] principles of separation of powers." 4 F.4th at 574.

The Seventh Circuit's emphatic repetition that nonretroactivity of sentencing amendments is ordinary, not extraordinary, leads the Court to conclude that it would

hold that U.S.S.G. § 1B1.13(b)(6) is an impermissible reading of the statutory text and context to the extent that it would treat the nonretroactive amendment to § 924(c) as an extraordinary and compelling reason to reduce a defendant's sentence. [*See* Dkt. 774 at 10–13 (arguing that *Thacker* considered and rejected "the exact question [Black] raises here" (citing 4 F.4th at 571)).]

Black's arguments to the contrary are unavailing. First, he contends that "the government merely proffers the same dictionary-definition approach used in *Thacker*, but rejected by the Commission," which is insufficient to establish that *Thacker* precludes the Commission's interpretation of the statute. [Dkt. 776 at 9 & n.5.] The Court notes that while the government discusses the ordinary meaning of "extraordinary" and cites a Sixth Circuit case that cited a dictionary definition [Dkt. 774 at 13–14], none of *Gunn*, *Black*, *Thacker*, *Brock*, *King*, or *Williams* discussed dictionary definitions. Instead, the Court takes Black to argue that the common meanings of "extraordinary" and "compelling" are not so clear that the Commission's interpretation of those terms necessarily conflicts with the statute. [Dkt. 776 at 9 (arguing that the Seventh Circuit's interpretation is just one possible reading of the statutory language).] This may be a reasonable argument, but the Court reads *Thacker* and its progeny to interpret § 3582(c)(1)(A)'s text and context to preclude nonretroactive statutory amendments from being "extraordinary and compelling" reasons, rather than picking one permissible meaning among several competing options. The Court is bound to apply that holding.

19

A.19

Second, he argues that there is no separation of powers problem because the Commission's reading of "extraordinary and compelling" does not entitle defendants like him to a reduced sentence that Congress did not authorize, but rather made "only some, not all, persons sentenced under the prior version of section 924(c) … eligible for a sentence reduction under section 1B1.13(b)." [Dkt. 776 at 10 (footnote omitted); *see also* Dkt. 769 at 16.] Again, this argument may be a persuasive reason to agree with the Commission's reading of § 3582(c)(1)(A), but this Court lacks the power to accept it. *Thacker* explained that granting *any* defendant a reduced sentence based on a nonretroactive sentencing amendment would violate the separation of powers because doing so would rest on an impermissible rationale. 4 F.4th at 574.

Black argues that "[t]hese two objections … mirror concerns voiced in *Thacker*. Yet in *Williams*, the Seventh Circuit acknowledged that the Commission can approve what *Thacker* seemingly condemned." [Dkt. 776 at 10 (citations omitted); *see* Dkt. 769 at 15 ("As the Seventh Circuit recently explained in *Williams*, 'the issue is teed up, and either the Commission or the Supreme Court (we hope) will address it soon.'" (cleaned up)).] The Court does not read *Williams* to undermine *Thacker*'s reasoning for several reasons. The quoted language is dicta, and *Williams* recounted *Thacker*'s holding and stated that it "s[aw] no reason to change [its] analysis at this time." 65 F.4th at 344–45. The fact that the Seventh Circuit mentioned the Commission's then-proposed amendment to § 1B1.13 does not signal how, if at all, that amendment would impact its precedent. *See id.* at 345 ("[T]his effort is still at an early stage—so early that we see no value in speculating on what such a change would mean.").

Nor does the fact that *Williams* suggested the Commission might weigh in on the circuit split change the Court's analysis. *Williams* pointedly took no position on the possible effect of the amendment. *Id.* It discussed the possibility that the Supreme Court, which undoubtedly has the power to overrule the Seventh Circuit on statutory interpretation questions, might take up the split. *Id.* at 348–49. And the defendant in *Williams* was serving a sentence that would be unconstitutional if imposed today, *id.* at 344; it is not impossible to imagine that serving a now-unconstitutional sentence could be considered "extraordinary and compelling," even if serving a disproportionately long sentence imposed under an earlier—but still constitutional—version of a statute cannot be. Finally, while *Williams* appeared to contemplate that the amendment to § 1B1.13 might cause the Seventh Circuit to change course, it did not indicate that it would be proper for district courts to stop following *Thacker*. *See id.* at 344 ("Williams wants *us* to reconsider [*Thacker*]. *We* decline the invitation for several reasons." (emphases added)); *cf. Haynes v. United States*, 873 F.3d 954, 955 (7th Cir. 2017) ("The Supreme Court has under advisement a case ... that may reveal whether [we] correctly applied [a Supreme Court case], but the district judge properly treated those decisions as controlling unless the Justices say otherwise.").

Similarly, the Seventh Circuit's recent opinion in *In re Thomas*, —F.4th—, 2024 WL 389246 (7th Cir. Feb. 2, 2024) (per curiam), does not signal a retreat from *Thacker*. *Thomas* clarified that a bar on filing papers "attacking" his conviction does not bar a prisoner from moving for compassionate release. *Id.* at *2. *Thomas* further suggested that there was a nonfrivolous argument that § 1B1.13(b)(6) gives district

21

courts discretion to grant compassionate release based on nonretroactive sentencing amendments. *Id.* The Court agrees that this argument is nonfrivolous—indeed, it might be a winner on appeal—but *Thomas* "express[ed] no opinion on that question," *id.*, so it does not change the landscape of existing Seventh Circuit caselaw.

Third, Black notes that courts in other circuits have held that § 1B1.13(b)(6) is consistent with the statutory term "extraordinary and compelling" and have reduced sentences on that basis. [Dkt. 777, 779.] But these decisions do not convince the Court that its analysis, which hinges on Seventh Circuit precedent, is mistaken. The cases from district courts in the Eleventh Circuit, *United States v. Padgett*, 06-cr-13 (N.D. Fla. Jan. 30, 2024), and *United States v. Smith*, 07-cr-48 (N.D. Fla. Feb. 2, 2024), are irrelevant to the Court's analysis because the Eleventh Circuit interpreted the pre-amendment version of § 1B1.13 to apply to motions filed by defendants. *See United States v. Bryant*, 999 F.3d 1243, 1252 (11th Cir. 2021) (noting that "several of our sister circuits have concluded that 1B1.13 is not an 'applicable policy statement' at all for defendant-filed motions" but concluding that "the commonsense reading of 'applicable policy statements' includes U.S.S.G § 1B1.13, no matter who files the motion" (cleaned up)). In other words, the Eleventh Circuit lacks caselaw that, like *Thacker*, interprets the statutory term "extraordinary and compelling," so a district court in the Eleventh Circuit applying § 1B1.13(b)(6) to reduce a defendant's sentence does not have to grapple with a *Thacker* analogue. Therefore, its reasoning for why the new policy statement is a valid exercise of the Commission's delegated power is not relevant to what this Court considers the dispositive question.

The decisions from courts in the Sixth and Eighth Circuits are more helpful to Black because those circuits, like the Seventh Circuit, interpreted "extraordinary and compelling reasons" in § 3582(c)(1)(A) not to include a nonretroactive sentencing amendment. *See United States v. McCall*, 56 F.4th 1048, 1055–56 (6th Cir. 2022) (en banc); *United States v. Crandall*, 25 F.4th 582, 585–86 (8th Cir. 2022). In *United States v. Capps*, 11-cr-108 (E.D. Mo. Jan. 31, 2024), the court held that § 1B1.13(b)(6) was a permissible interpretation of § 3582(c)(1)(A) despite *Crandall*, because the Commission has the first responsibility to determine what reasons are extraordinary and compelling, and the Commission limited when a nonretroactive statutory change could be deemed an extraordinary and compelling reason. [Dkt. 777 at 18–19.] *United States v. Smith*, 95-cr-66 (S.D. Ohio Feb. 2, 2024), reasoned similarly, relying in part on *Capps* to conclude that § 1B1.13(b)(6) was valid. [Dkt. 779 at 9–15.]

*Capps* and *Smith* demonstrate the strength of Black's arguments about the validity of § 1B1.13(b)(6), but decisions interpreting the law of other circuits do little to convince this Court that is has misconstrued Seventh Circuit precedent. There are distinctions between the caselaw *Capps* and *Smith* applied and the *Thacker* line of cases. *Capps* noted that § 1B1.13(b)(6) contains a "limiting principle" that prevents all defendants serving no-longer-applicable mandatory sentences from being eligible for compassionate release, which it took to be responsive to a concern raised by the Eighth Circuit. [Dkt. 777 at 18.] *See Crandall*, 25 F.4th at 585. And *Smith* read Sixth Circuit precedent to rest on courts' discretion to interpret § 3582(c)(1)(A) in the absence of guidance from the Commission and an express reservation of the question

23

of whether the Commission could interpret § 3582(c)(1)(A) differently than it had. [Dkt. 779 at 14–15.] *See McCall*, 56 F.4th at 1054 & n.3. Although Seventh Circuit precedent is similar to these circuits', it contains subtle differences from *Crandall*'s concern about the lack of a limiting principle, *see Thacker*, F.4th at 574 (indicating that if any defendant receives a reduced sentence based on impermissible rationales, it would offend the separation of powers), and unlike *McCall*, *Thacker* decided the statutory interpretation question with no indication that the Commission might be able to adopt a contrary reading of the statute, *see id.* at 573–74 (noting that district courts have broad statutory discretion in the absence of an applicable policy statement).[8] Therefore, *Capps* and *Smith* do not persuade the Court its reading of Seventh Circuit precedent is incorrect.[9]

Finally, Black argues that because Congress did not block the amendment to § 1B1.13 from taking effect, it "evidently saw no conflict between the amended guideline and the decision to make amended section 924(c) prospective." [Dkt. 769 at 16–17; *see also* Dkt. 774 at 10 n.6.] The government argues that congressional

---

[8]    As the Court has explained, *Williams* noted the proposed amendment to § 1B1.13 but expressly left *Thacker* in place and did not indicate whether the Commission could displace the Seventh Circuit's reading of the statute. 65 F.4th at 344–45.

[9]    The Court has focused on its interpretation of binding precedent, but other district courts in the Seventh Circuit have noted that "[t]he *Thacker* line of cases can be read to hold that the statutory definition of 'extraordinary' does not extend to law changes, which means there is a question about whether the Sentencing Commission exceeded its authority when it added this item to the list of potentially extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A)(i)." *United States v. Jackson*, 2023 WL 8086745, at *3 (S.D. Ind. Nov. 21, 2023) (Barker, J.) (citation omitted) (but ruling on other grounds)); *accord, e.g.*, *United States v. Sims*, 2023 WL 8188360, at *2–3 (S.D. Ind. Nov. 27, 2023) (Sweeney, J.); *United States v. Mediate*, 2023 WL 8188359, at *2–3 (S.D. Ind. Nov. 27, 2023) (Pratt, C.J.); *United States v. Shelton*, 2023 WL 8702263, at *3–4 (S.D. Ind. Dec. 15, 2023) (Magnus-Stinson, J.).

inaction does not imply support for the Commission's action. [Dkt. 774 at 21–23.] However persuasive this argument might be, it is properly directed to the Seventh Circuit, not this Court, which is bound by *Thacker* and its progeny. Black is welcome to ask the Seventh Circuit to overrule the *Thacker* line of cases, but the Court holds that it is bound to apply those precedents.

## IV. Conclusion

For the foregoing reasons, the Court concludes that the Seventh Circuit has interpreted 18 U.S.C. § 3582(c)(1)(A) to preclude a nonretroactive amendment to a statutory sentence from being considered an extraordinary and compelling reason to reduce a sentence. As the Seventh Circuit has construed that statute, the amended U.S.S.G. § 1B1.13(b)(6) is not a reasonable reading of § 3582(c)(1)(A). Thus, the Court cannot defer to the Commission's interpretation of the statute under *Chevron*. Instead, the Court must apply *Thacker* and its progeny and deny Black's motion for a reduced sentence. [Dkt. 769.] Because the Court denies his motion based on this threshold legal issue, it takes no position on whether it would find extraordinary and compelling circumstances if it had the discretion to do so or how it would weigh the 18 U.S.C. § 3553(a) factors.

Enter: 05-cr-70-4
Date: February 6, 2024

_____
Lindsay C. Jenkins
United States District Judge