24-1191

# In the
# United States Court of Appeals
### For the Seventh Circuit

———·———

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

EURAL BLACK,

*Defendant-Appellant.*

———————————————————

On Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division
No. 05 CR 70-4
The Honorable Lindsay C. Jenkins

## APPELLANT'S REPLY BRIEF

William H. Theis
2027 E. 17th St.
Lawrence, KS 66044
(847) 275-3080
william_theis@att.net

*Attorney for Defendant-Appellant Eural Black*

**AUGUST 7, 2024**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................ i

TABLE OF AUTHORITIES.................................................................ii

ARGUMENT.................................................................................... 1

I.      The Commission's policy statement has the force of
        law........................................................................................ 4

II.     This Court's decision in *United States v. Thacker* has
        not resolved the validity of the Commission's policy
        statement. ........................................................................... 5

III.    The Commission's policy statement is not contrary to
        statute. ................................................................................ 9

        A.      The policy statement is not contrary to 18 U.S.C.
                § 3582(c)(1)(A)............................................................ 9

                1.      The text of § 3582(c)(1)(A) does not support the
                        government's argument ........................................... 10

                2.      Section 3582(c)(1)(A)'s context does not support
                        the government's argument, either....................... 14

        B. The policy statement is not contrary to the primary
                purpose of the Sentencing Reform Act............................ 19

        C. The policy statement does not present a separation-
                of-powers problem............................................................. 22

CONCLUSION ...................................................................... 24

CERTIFICATE OF COMPLIANCE WITH RULE 32(A)(7) ........... 25

CERTIFICATE OF SERVICE ................................................................. 26

# TABLE OF AUTHORITIES

## Cases

*Batterton v. Francis*, 432 U.S. 416 (1977) .......................................passim

*Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020)............ 18

*Dillon v. United States*, 560 U.S. 817 (2010)...................................... 5, 23

*Dorsey v. United States*, 567 U.S. 260 (2012) ................................... 11, 13

*In re Thomas*, 91 F.4th 1240 (7th Cir. 2024)......................................... 18

*Kemp v. United States*, 596 U.S. 528 (2022)......................................... 12

*Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) .......... 1, 4

*Mistretta v. United States*, 488 U.S. 361 (1989) ..................................... 22

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005)................................................................................. 10

*Neal v. United States*, 516 U.S. 284 (1996) .....................................10-11

*Setser v. United States*, 566 U.S. 231 (2012) ...................................13-14

*United States v. Brooks*, __ F. Supp. 3d __, 2024 WL 689766 (N.D. Okla. Feb. 20, 2024).................................................................................. 3

*United States v. Ali*, __ F. Supp. 3d __, 2024 WL 3161749 (E.D. Pa. June 25, 2024)....................................................................................... 2

*United States v. Allen*, 2024 WL 631609 (N.D. Ga. Feb. 12, 2024)......... 3

*United States v. Bailey*, 2024 WL 2291497 (S.D. Ind. May 20, 2024)..... 3

*United States v. Bizzell*, 2024 WL 1832995 (M.D. Fla. Apr. 26, 2024) ... 3

*United States v. Bolton*, __ F. Supp. 3d__, 2024 WL 1966448 (E.D. La. May 3, 2024).................................................................................... 3

*United States v. Brown*, 2024 WL 409062 (S.D. Ohio Feb. 2, 2024) ....... 3

*United States v. Buggs*, 2024 WL 2130566 (N.D. Ind. May 13, 2024) .... 3

*United States v. Capps*, 2024 WL 880554 (E.D. Mo. Jan. 31, 2024) ....... 3

*United States v. Carswell*, 2024 WL 2113770, at *4 (S.D. Fla. May 10, 2024) ..................................................................................................... 3

*United States v. Carter*, 2024 WL 136777 (E.D. Pa. Jan. 12, 2024)........ 4

*United States v. Cousins*, 2024 WL 1516121 (N.D. Ga. Apr. 4, 2024) 3

*United States v. Cunningham*, 554 F.3d 703 (7th Cir. 2009) ................. 4

*United States v. Daniel*, 2024 WL 3103311 (S.D. Fla. June 24, 2024) ... 3

*United States v. Frazier*, 2024 WL 1285931 (W.D. Pa. Mar. 26, 2024) .. 4

*United States v. Garcia*, 2024 WL 1661120 (M.D. Tenn. Apr. 16, 2024) 3

*United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020)............................ 6

*United States v. Henderson*, 2024 WL 881253 (E.D. Mo. Feb. 23, 2024) 3

iii

*United States v. Hill*, 2024 WL 2089011, at *1 (N.D. Ohio May 9, 2024) 3

*United States v. Jean*, __ F.4th __, 2024 WL 3409145 (5th Cir. July 15, 2024) ................................................................................. 2

*United States v. Johnson*, 2024 WL 665179 (E.D. Pa. Feb. 16, 2024) .... 4

*United States v. LaBonte*, 520 U.S. 751 (1997) ................................. 4, 5

*United States v. Martinez*, 2024 WL 866822 (D. Utah Feb. 29, 2024) .... 3

*United States v. McHenry*, 2024 WL 1363448 (N.D. Ohio Mar. 29, 2024) ................................................................................................. 3

*United States v. Miller*, 2024 WL 3273789 (E.D. Wis. July 2, 2024) ...... 3

*United States v. Moore*, 2024 WL 890003 (7th Cir. Feb. 26, 2024) ......... 8

*United States v. Morton*, 467 U.S. 822 (1984) ......................................... 5

*United States v. Padgett*, 2024 WL 676767 (N.D. Fla. Jan. 30, 2024) .... 3

*United States v. Pierce*, 2024 WL 2219739 (S.D.N.Y. May 15, 2024) ..... 3

*United States v. Skeeters*, 2024 WL 992171 (E.D. Pa. Mar. 7, 2024) ...... 3

*United States v. Smith*, 2024 WL 885045 (N.D. Fla. Feb. 20, 2024) (unpub.) ...................................................................................... 3

*United States v. Smith*, No. 3:06-cr-30072-BGC, dkt. 43 (C.D. Ill. May 1, 2024) ......................................................................................... 3

*United States v. Spaulding*, 2024 WL 3252397 (S.D. Ind. June 28, 2024) ................................................................................................. 3

*United States v. Spradley*, 2024 WL 1702873 (S.D. Ind. Apr. 18, 2024) 3

*United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021) .................... *passim*

*United States v. Tichenor*, 2024 WL 3252501 (S.D. Ind. June 28, 2024) 3

*United States v. Ware*, __ F. Supp. 3d __, 2024 WL 1007427 (N.D. Ga. Mar. 6, 2024) .......................................................................... 3

*United States v. Williams*, 2023 WL 8868502, at *1 n.2 (7th Cir. Dec. 22, 2023) ..................................................................................... 8

*United States v. Williams*, 65 F.4th 343 (7th Cir. 2023) ..................... 7-8

*United States v. Wilson,* 2024 WL 1556313 (N.D. Ohio Apr. 10, 2024)... 3

**Statutes**

18 U.S.C. § 3582(c)(1)(A) .......................................................... *passim*

18 U.S.C. § 3582(c)(2) ...................................................................... 15

18 U.S.C. § 924(c) ...................................................................... *passim*

21 U.S.C. § 841 ................................................................................ 14

28 U.S.C. § 2255 ......................................................................... 17-19

28 U.S.C. § 994(t) ...............................................*passim*
5 U.S.C. § 706(2)(A) ........................................... 5
Pub. L. No. 98-473, 98 Stat. 1837 (1984)……………………………………..9
Pub. L. No. 115-391, 132 Stat. 5194 (2018) ...................................*passim*

**Rules**

Fed. R. Civ. P. 60(b)(6) ............................................. 13

**Regulations**

88 Fed. Reg. 7180, 7184 (proposed Feb. 2, 2023) ..................................... 8
U.S.S.G. § 1B1.13(b)(6) ......................................................*passim*

**Other Authorities**

3 Oxford English Dictionary 599 (2d ed. 1989) ..................................... 13

# ARGUMENT

Mr. Black seeks early release from an unusually long sentence that is based on "stacked" sentences imposed under 18 U.S.C. § 924(c). The gross disparity between the sentence he is serving and the one that would likely be imposed today, combined with individualized factors, present "extraordinary and compelling" reasons for his release under 18 U.S.C. § 3582(c)(1)(A) in light of the binding guidance at U.S.S.G. § 1B1.13(b)(6). The government counters that the meaning of "extraordinary and compelling," found in section 3582, is unambiguous and excludes gross disparities related to legal changes, and that the Commission has no authority to say otherwise. The government also claims that the Commission's policy statement is inconsistent with several statutory provisions.

The government's position is unsupportable. As the district court held, the language "extraordinary and compelling" is ambiguous. R. 781, at 16; A. 16. If it had a plain and unambiguous meaning, Congress would not have charged the Commission with the responsibility of defining its meaning. *Batterton v. Francis*, 432 U.S. 416, 428 (1977) ("Congress itself must have appreciated that the meaning of the statutory term was not self-evident, or it would not have given the Secretary the power to prescribe standards."); *cf. Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2263 (2024) (noting that sometimes Congress empowers an agency to operate under a "term or

phrase that leaves agencies with flexibility, such as 'appropriate' or 'reasonable'") (citation omitted). And if "extraordinary and compelling" had a plain and unambiguous meaning, the circuit courts would not have split essentially 50/50 when they attempted to apply that statute during the period when there was no applicable policy statement.[1]

Further, the Commission's policy statement is not inconsistent with any statutory provision. Neither § 3582(c)(1)(A) nor the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018) places any limit on the Sentencing Commission's delegated authority in this space. The only statutory restriction on the Commission is that any definition of "extraordinary and compelling reasons" cannot rely on rehabilitation alone as a basis for relief. 28 U.S.C. § 994(t). The policy statement under review does not in any way violate this proscription. Judges in district courts around the country have rejected the government's argument that § 1B1.13(b)(6) is invalid,[2] and this Court should do the same.

---

[1] Since the government described this split, Gov. Br. 15 n.8, the Fifth Circuit (in a to-be-published decision) has joined with the First, Second, Fourth, Ninth, and Tenth Circuits in holding that for a motion filed pre-amendment, the district court had discretion to consider a legal change as part of the "extraordinary and compelling" analysis. *See United States v. Jean*, __ F.4th __, 2024 WL 3409145 (5th Cir. July 15, 2024).

[2] *See, e.g., United States v. Ali*, __ F. Supp. 3d __, 2024 WL 3161749 (E.D. Pa. June 25, 2024) (rejecting the government's validity argument and reducing the

sentence under § 1B1.13(b)(6)); *United States v. Ware*, __F. Supp. 3d __, 2024 WL 1007427 (N.D. Ga. Mar. 6, 2024) (same); *United States v. Brooks*, __ F. Supp. 3d __, 2024 WL 689766 (N.D. Okla. Feb. 20, 2024) (same); *United States v. Daniel*, 2024 WL 3103311 (S.D. Fla. June 24, 2024) (unpub.) (same); *United States v. Bailey*, 2024 WL 2291497 (S.D. Ind. May 20, 2024) (unpub.) (same); *United States v. Pierce*, 2024 WL 2219739 (S.D.N.Y. May 15, 2024) (unpub.) (same); *United States v. Carswell*, 2024 WL 2113770, at *4 (S.D. Fla. May 10, 2024) ("First, the undersigned has joined the chorus of other district courts in this Circuit rejecting the Government's argument that the Sentencing Commission was without authority to enact this amendment."); *United States v. Smith*, No. 3:06-cr-30072-BGC, dkt. 43 (C.D. Ill. May 1, 2024) (unpub.) (rejecting the government's validity argument and reducing the sentence under § 1B1.13(b)(6)); *United States v. Bizzell*, 2024 WL 1832995 (M.D. Fla. Apr. 26, 2024) (unpub.) (same); *United States v. Spradley*, 2024 WL 1702873 (S.D. Ind. Apr. 18, 2024) (unpub.) (same); *United States v. Garcia*, 2024 WL 1661120 (M.D. Tenn. Apr. 16, 2024) (unpub.) (same); *United States v. Cousins*, 2024 WL 1516121 (N.D. Ga. Apr. 4, 2024) (unpub.) (same); *United States v. Skeeters*, 2024 WL 992171 (E.D. Pa. Mar. 7, 2024) (unpub.) (same); *United States v. Martinez*, 2024 WL 866822 (D. Utah Feb. 29, 2024) (unpub.) (same); *United States v. Henderson*, 2024 WL 881253 (E.D. Mo. Feb. 23, 2024) (unpub.) (same); *United States v. Smith*, 2024 WL 885045 (N.D. Fla. Feb. 20, 2024) (unpub.) (same); *United States v. Allen*, 2024 WL 631609 (N.D. Ga. Feb. 12, 2024) (unpub.) (same); *United States v. Brown*, 2024 WL 409062 (S.D. Ohio Feb. 2, 2024) (unpub.) (same); *United States v. Capps*, 2024 WL 880554 (E.D. Mo. Jan. 31, 2024) (unpub.) (same); *United States v. Padgett*, 2024 WL 676767 (N.D. Fla. Jan. 30, 2024) (unpub.) (same); *cf. United States v. Bolton*, __ F. Supp. 3d__, 2024 WL 1966448 (E.D. La. May 3, 2024) (referring to the government's textual analysis of § 3582(c)(1)(A) "debatable, if not plainly dubious," and finding "persuasive" the reasoning of courts that have determined that 1B1.13(b)(6) is valid, but denying the motion based on 3553(a) factors). Even this long list does not nearly capture all of the § 1B1.13(b)(6) grants.

A smaller number of district judges have agreed with the government's validity argument (in addition to the judge in this case), generally in reliance on pre-amendment circuit law. *See, e.g., United States v. Miller*, 2024 WL 3273789 (E.D. Wis. July 2, 2024) (relying on *Thacker*); *United States v. Tichenor*, 2024 WL 3252501 (S.D. Ind. June 28, 2024) (same); *United States v. Spaulding*, 2024 WL 3252397 (S.D. Ind. June 28, 2024) (same); *United States v. O'Neill*, 2024 WL 2369102 (E.D. Wis. May 23, 2024) (same) (on appeal); *United States v. Buggs*, 2024 WL 2130566 (N.D. Ind. May 13, 2024) (same) (on appeal); *United States v. Hill*, 2024 WL 2089011, at *1 (N.D. Ohio May 9, 2024) (relying on pre-amendment Sixth Circuit caselaw); *United States v. Wilson*, 2024 WL 1556313 (N.D. Ohio Apr. 10, 2024) (same) (on appeal); *United States v. McHenry*, 2024 WL 1363448 (N.D. Ohio Mar. 29, 2024) (same) (on appeal); *United States v. Frazier*, 2024 WL 1285931 (W.D.

I.     **The Commission's policy statement has the force of law.**

At the outset, it is essential to keep in mind the effect produced when Congress expressly delegates to an agency the authority to give meaning to a statutory term. When Congress makes an express delegation, the agency's reading of the statute has "legislative effect." *Batterton v. Francis*, 432 U.S. 416, 425 (1977).[3] Or, as this Court explained in the context of § 3582(c)(2), where Congress delegated to the Sentencing Commission the job of determining the circumstances under which sentences could be reduced based on retroactive guideline amendments, "the Commission's policy statements should for all intents and purposes be viewed as part of the statute." *United States v. Cunningham*, 554 F.3d 703, 708 (7th Cir. 2009).

In other words, a court is not free to set aside the Commission's reading "simply because it would have interpreted the statute in a different manner." *Batterton*, 432 U.S. at 425. The Sentencing Commission cannot craft a binding policy statement that contradicts a statute's plain meaning (if the statute has a plain meaning). *See United States v. LaBonte*, 520 U.S. 751, 757

---

Pa. Mar. 26, 2024) (relying on pre-amendment Third Circuit caselaw); *United States v. Johnson*, 2024 WL 665179 (E.D. Pa. Feb. 16, 2024) (same); *United States v. Carter*, 2024 WL 136777 (E.D. Pa. Jan. 12, 2024) (same) (on appeal).

[3] In *Loper*, the Supreme Court recently reaffirmed *Batterton's* continuing vitality. 144 S. Ct. at 2263.

(1997).[4] The parties agree on this point. But in the context of what can be considered "extraordinary and compelling reasons" warranting a sentence reduction, *LaBonte* does not mean that a court is free to reject the Sentencing Commission's policy judgment in favor of its own.[5] When Congress has made a *Batterton* delegation, a court "must give the regulations legislative and hence controlling weight unless they are arbitrary, capricious, or plainly contrary to the statute." *United States v. Morton*, 467 U.S. 822, 834 (1984).

## II. This Court's decision in *United States v. Thacker* has not resolved the validity of the Commission's policy statement.

The government leads with the argument that in *United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021), this Court has already decided that the

---

[4] The government agrees that the Commission's policy statement is, at least theoretically, binding. Gov't Br. 29 (citing *Dillon v. United States*, 560 U.S. 817, 826-27 (2010)).

[5] The government's brief could be read to suggest that there is some sort of free-floating reasonableness standard that governs an agency's exercise of delegated authority, based on the fact that the Supreme Court in *Batterton* noted that the agency's exercise of delegated authority in that case was "reasonable." Gov't Br. 20, 23, 30, 31, 35, 42. It would appear that the *Batterton* court was using "reasonable" as synonymous with "not arbitrary," given the Administrative Procedure Act's requirement that any regulation not be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See Batterton*, 432 U.S. at 426 (citing 5 U.S.C. § 706(2)(A). Regardless, *Batterton*'s reference to the Department of Labor's reasonableness in defining "unemployed" (to exclude certain persons who were not, in fact, employed) should not be read as an invitation for Article III judges to reject an agency's exercise of expressly delegated authority whenever they have policy disagreements with the Commission.

statutory terms "extraordinary and compelling reasons" cannot possibly be interpreted in a manner that permits any consideration of legal changes. According to the government, the Commission's policy statement changes nothing, since the Commission's policy statement conflicts with the statute as construed in *Thacker*. Gov't Br. 24-35.

*Thacker* had no applicable policy statement to consider, and it could not render a precedential opinion on a policy statement that did not exist. The government attempts to avoid this problem by claiming that *Thacker* "authoritatively construed" § 3582(c)(1)(A)'s "plain statutory language." Gov't Br. 33-34. But it is simply not true that § 3582(c)(1)(A) has a plain meaning. The district court in this case concluded that the language "extraordinary and compelling" is ambiguous. R. 781, at 16; A. 16. Indeed, the Court in *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020), was especially concerned about the mischief that could ensue if each district court judge could decide what was an extraordinary and compelling reason apart from the reasons identified in the then-existing policy statement (which governed only government motions). If section 3582(c)(1)(A) had a plain meaning, *Gunn's* concerns about a possible "Wild West" of sentence reductions were misplaced.

During this interim period, *Thacker* expressed this Court's unwillingness to give free rein for early releases based on changes in the law.

But *Thacker* nowhere claims that the phrase "extraordinary and compelling reasons" has a plain meaning or that it is unambiguous.[6] And *Thacker* nowhere suggests that the Sentencing Commission, in fulfilling its duty under § 994(t), lacked authority to promulgate a policy statement that would factor legal changes into a larger analysis in some as-yet-unknown way.

Consistent with its limited holding in *Thacker*, this Court has signaled that *Thacker* is not the last word and can be upended once the Commission takes up the task of defining extraordinary and compelling reasons for a sentence reduction. That was the message in *United States v. Williams*, 65 F.4th 343, 348 (7th Cir. 2023), where the Court pointedly commented that the Sentencing Commission was then considering a policy statement that under section 3582(c)(1)(A) would cover claims related to legal changes. *Williams* further observed that the question was now "teed up," and might soon be

---

[6] The government repeatedly characterizes the policy statement as an "interpretation" of § 3582(c)(1)(A) (which is in conflict with *Thacker*'s interpretation of § 3582(c)(1)(A)). *See, e.g.,* Gov't Br. 29-30. But as discussed herein and more thoroughly in Black's opening brief, the phrase "extraordinary and compelling reasons" is broad, ambiguous, and open-ended. *See* Def. Br. at 29-38. It does not have a narrow, acontextual definition. In reality, this phrase invite policy making, and Congress designated the Sentencing Commission to be the policy-maker. Thus, *Thacker* is best understood as an exercise of judicial restraint—as this Court declining to permit district judges to make policy in this space that went well beyond anything a previous Sentencing Commission had ever done. But now that the Sentencing Commission has promulgated a new set of policies, which applies to defendant-filed motions, the courts are obliged to apply them.

resolved either by the Commission or by the Supreme Court. The government attempts to minimize *Williams* as dicta. Gov't Br. 27. But *dicta* or not, *Williams* suggests that there are judges on this Court who would not agree with the government's claim that *Thacker* is the final word on the matter that is now before this Court.

Even more recently in *United States v. Moore*, 2024 WL 890003 (7th Cir. Feb. 26, 2024) (unpub.), this Court referred to section 1B1.13(b)(6) as an exception to the holding in *Thacker*. The Court explained that (b)(6) would "permit[] some defendants to seek early release based on intervening changes in constitutional or criminal law." 2024 WL 890003 at *2. The Court noted that the appellant could not take advantage of the section, since he had not served 10 years in prison. Although *Moore* is not a published opinion, it aligns with the Court's commentary in *Williams* that the Commission can supersede *Thacker* and define "extraordinary and compelling reasons" to include circumstances where a "'defendant is serving a sentence that is inequitable in light of changes in the law.'" *Williams*, 65 F.4th at 345 (quoting Sentencing Guidelines for United States Courts, 88 Fed. Reg. 7180, 7184 (proposed Feb. 2, 2023)). See also *United States v. Williams*, 2023 WL 8868502, at *1 n.2 (7th Cir. Dec. 22, 2023) (unpub.) (". . . U.S.S.G. § 1B1.13(b)(6) permits courts to consider a change in the law when, among

8

other considerations, the defendant has served more than 10 years of his sentence. But because Williams has not served more than 10 years, the new guideline does not alter our analysis here.").

III. **The Commission's policy statement is not contrary to statute.**

Since *Thacker* has not resolved whether the Commission had the power to issue the policy statement at § 1B1.13(b)(6), the question before this Court is whether the policy statement contradicts statutory law. The government argues that the policy statement is contrary to section 3582(c)(1)(A) and, relatedly, with the overall aims of the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837 (1984). The government also argues that the policy statement contradicts § 403 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), which amended 18 U.S.C. § 924(c)). Each of these arguments will be considered in turn.

A. **The policy statement is not contrary to 18 U.S.C. § 3582(c)(1)(A).**

The government's primary argument is that the phrase "extraordinary and compelling," found in section 3582(c)(1)(A), has a plain meaning that excludes any consideration of the reduced penalty for section 924(c). Thus, according to the government, even if *Thacker* did not resolve this question, *Thacker*-inspired reasoning should lead to the conclusion that the policy statement is contrary to section 3582(c)(1)(A). Gov't Br. 29-35, 35-47.

### 1. The text of § 3582(c)(1)(A) does not support the government's argument

The government, relying on *Neal v. United States*, 516 U.S. 284 (1996), argues that the Commission's policy statement is contrary to section 3582(c)(1)(A). But *Neal* spoke to a situation where a guideline contradicts an unambiguous statute. *See Neal*, 516 U.S. at 295-96. That is, "*Neal* established only that a precedent holding a statute to be unambiguous forecloses a contrary agency construction." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 984 (2005). On its face, the belief that "extraordinary and compelling reasons" has a plain and unambiguous meaning is a fantasy. As demonstrated above, *Thacker* never held that the phrase is unambiguous.

Indeed, if this phrase were unambiguous, Congress would not have called upon the Commission to develop its meaning. As *Batterton* has emphasized, "Congress itself must have appreciated that the meaning of the statutory term was not self-evident, or it would not have given the Secretary the power to prescribe standards." 432 U.S. at 428. Congress in section 994(t) gave a pinpoint directive to the Commission that it should flesh out the

meaning of extraordinary and compelling.[7] Since section 3582(c)(1)(A) does not have a plain meaning, *Neal* does not apply to this case.

The government, then, has no authority in direct support of its position. In an effort to overcome this deficiency, the government builds a rickety structure whose foundation is the default rule that a defendant is subject to the penalty in effect when he or she committed the offense. In particular, the government emphasizes, Gov't Br. 39, this language in *Dorsey v. United States*, 567 U.S. 260, 280 (2012): "[I]n federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." If something is ordinary, it cannot be extraordinary, reasons the government.[8]

---

[7] In 28 U.S.C. § 994(t), Congress charged the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." The government suggests that this provision, although it requires the Commission to describe classes of cases that qualify as extraordinary and compelling, leaves to the courts the sole authority to define the statutory phrase. Gov't Br. 1, 32-33. The government's attempted distinction between defining and describing falls flat. Section 994(t) calls for the Commission to formulate "criteria" and to give examples. It does not make a distinction between description and definition. Moreover, the government's attempted distinction between defining and describing assumes that extraordinary and compelling has a plain meaning, which it does not.

[8] The government's argument sounds very much like the "tautological" approach condemned in *Batterton*. 432 U.S. at 428.

As discussed in Black's opening brief, the fact that something is "ordinary," if considered on its own and without context, does not mean that it can *never* be extraordinary, in any context. *See* Def. Br. at 34-35. The government does not seriously engage with this point. There is almost nothing more ordinary than the aging process. And serious, debilitating health problems are also, unfortunately, common. Yet the government has never challenged the Sentencing Commission's inclusion of age and health issues in § 1B1.13. And the parties agree that Congress when it created the "extraordinary and compelling reasons" standard was thinking of age and health, along with other circumstances. Gov't Br. at 49. Although there may be nothing extraordinary about aging or developing debilitating health problems as a general matter, these same developments, when considered in the context of a particular individual who is experiencing these issues in a federal prison, can amount to "extraordinary and compelling reasons" for reducing a sentence that was imposed before the issues arose.

In just the same fashion, we can accept that it is ordinary for courts to apply legal changes prospectively, while recognizing that the impact of a legal change can be "extraordinary" as it relates to a particular case and a particular constellation of circumstances. *See Kemp v. United States*, 596 U.S. 528, 540 (2022) (Sotomayor, J., concurring) (collecting cases in the Fed. R.

Civ. P. 60(b)(6) context establishing that "extraordinary circumstances" can include "a change in controlling law"). As for "compelling," a determination that a particular circumstance is or is not "compelling" is necessarily a value-laden policy determination—one that Congress expressly tasked the Commission to make.[9]

Dorsey dealt with the sentence to be imposed after conviction; it did not deal with a request to reduce a sentence already imposed. In the same term as *Dorsey*, the Supreme Court indicated that legal issues that arise after an original sentencing can, in fact, support a reduced sentence under § 3582(c)(1)(A). In *Setser v. United States*, 566 U.S. 231 (2012), the Court held that a district judge could order that a federal sentence run consecutive to whatever state sentence might later be imposed, notwithstanding that the state sentence does not exist at the time of the federal sentencing proceeding. In response to the defense argument that the district judge's sentence might fail to anticipate later developments in the state proceedings and thereby create unfairness to the defendant, the Court responded that "the

---

[9] "Compelling" is an even more flexible term than "extraordinary." The verb "compel" has a wide range of meanings, including "to bring about by . . . moral necessity" and "to exact by rightful claim." 3 Oxford English Dictionary 599 (2d ed. 1989).

[Sentencing Reform] Act provides a mechanism for relief": "[s]ection 3582(c)(1)(A)." 566 U.S. at 242-43.

As *Setser* confirmed, a federal judge can make a sentence consecutive to a state sentence, even a state sentence yet to be imposed. *Setser*'s holding confirms the ordinary nature of a consecutive federal sentence. However, *Setser* also recognized that imposition of a sentence is a separate question from reduction of a sentence, and *Setser* confirmed that what is ordinary as a general matter might be considered extraordinary in a particular context.[10]

### 2. Section 3582(c)(1)(A)'s context does not support the government's argument, either.

The government also argues that section 3582(c)(1)(A)'s context supports its argument that "extraordinary and compelling" cannot encompass circumstances related to intervening changes in the law. Gov't Br. 45-47. The

---

[10] The government also attempts to draw negative inferences from the First Step Act's provision for retroactive relief to defendants sentenced under a prior version of 21 U.S.C. § 841. That is, since the First Step Act gave retroactive relief to these defendants, Congress must have intended to deny relief to those previously sentenced under section 924(c). Gov't Br. 39-40. It is understandable that Congress made special provision for the thousands of individuals who might need relief from section 841 convictions. The government goes too far when it argues that relief for one large class of defendants repeals or amends section 3582(c)(1)(A), thereby denying relief for a different (and much smaller) class of defendants. The government argues repeal by implication, a strategy disfavored by the Supreme Court. Def. Br. 44-45.

government wants to consider context, but its view of context is unduly narrow.

First and foremost, the government ignores that Congress expressly delegated to the Sentencing Commission, not to the government or the courts, the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). And Congress erected just one limitation on this delegation: that "rehabilitation . . . alone" could not suffice. *Id.* Within this context, only a policy statement "plainly contrary" to section 3582(c)(1)(A) will fall.

In framing its limited view of context, the government focuses, instead, on two statutory provisions. It first turns to 18 U.S.C. § 3582(c)(2). Under that provision, a defendant may obtain a sentence reduction if the Commission has amended a sentencing guideline and has declared the amendment to be retroactive. In the government's view, if "extraordinary and compelling" includes changes in the law, then § 3582(c)(2), the provision that governs retroactive guideline amendments, would be superfluous. Stated somewhat differently, since (c)(2) permits reductions based on changes in the guidelines, (c)(1) allows no relief based on changes in the law. Gov't Br. 45-47.

The government's argument fails because it does not distinguish, as Congress unmistakably did, between guidelines amendments and all other changed circumstances. Congress had good reason to distinguish the two classes of cases and create separate tracks for their treatment. Congress anticipated that the Commission would frequently amend and refine the guidelines in ways both big and small. That expectation has been confirmed time and time again over the decades. Congress further recognized that the Commission, in amending the guidelines, would be well-positioned to decide what amendments would be retroactive. Under (c)(2), Congress gave the Commission authority to make decisions about retroactivity without examining whether an amendment presents an extraordinary and compelling reason for retroactivity. Circumstances related to guideline amendments are particularly unlikely to be "extraordinary and compelling," given that the Sentencing Guidelines are advisory and serve only to channel district courts' discretion within a mandatory statutory range. (This likely explains why the Sentencing Commission excepted its own amendments from § 1B1.13(b)(6).) With § 3582(c)(2), the Commission has the authority to decide that even modest guideline amendments should be retroactively applicable.

Congress also anticipated that circumstances not related to guidelines amendments might give rise to extraordinary and compelling reasons for a

sentence reduction. Subsection (c)(1)(A) speaks to this wider class of cases, which includes all sorts of changed circumstances, legal and otherwise. With (c)(1)(A), Congress authorized the Sentencing Commission to deem only extraordinary circumstances to be bases for sentence reduction, and only when they involve the sort of inequity that would compel a court to act. The government draws unwarranted inferences from the "context" it has constructed. Subsection (c)(1)(A) in no way makes subsection (c)(2) superfluous.

The government also regards 28 U.S.C. § 2255, which provides for post-conviction relief, as part of its "context." Here, too, the government stumbles. A motion for judicial sentence modification is wholly distinct from a motion for relief from a conviction or sentence under § 2255. Section 3582(c)(1)(A) is a discretionary safety valve: if the requirements imposed by § 3582(c)(1)(A) and § 1B1.13 are met, and after consideration of the § 3553(a) factors, a sentencing court has discretion to release the individual from custody, reduce the sentence, or deny the motion entirely. Section 3582(c)(1)(A) is not a collateral attack on a conviction or sentence; it does not resolve claims of legal error; and it creates no entitlement to relief. As discussed in Black's opening brief, discretionary judicial sentence reduction has a historical pedigree of its own. Def. Br. 39-40.

In contrast, habeas corpus, which for federal prisoners is codified at § 2255, is "a means of contesting the lawfulness of restraint and securing release." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020); *see also* § 2255(a) (providing a mechanism for a federal prisoner to "claim[]the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack"). That is, if the prisoner proves that his continued detention is unlawful, he has a right to be released.

This Court's recent decision in *In re Thomas*, 91 F.4th 1240 (7th Cir. 2024),[11] recognizes that § 3582(c)(1)(A) is entirely distinct from a collateral challenge under section 2255. "Properly understood, a motion for a sentence reduction under § 3582(c)(1) or (c)(2) does not attack the sentence at all. It accepts the legal validity of the sentence imposed but asks for modification to account for changed circumstances." *Thomas*, 91 F.4th at 1242; *see also id.* ("A [§ 3582(c)(1)(A)] movant cannot rightly claim he is legally *entitled* to compassionate release because the background sentencing law has changed,

---

[11] The government erroneously refers to *Thomas* as an unpublished opinion. Gov't Br. 28.

but he may argue that he nonetheless *deserves* a sentence reduction based on that change and other relevant factors.").

This is not to say that an individual defendant might not file a § 3582(c)(1)(A) motion that "resembles too closely an impermissible collateral attack." *Id.* But with such a motion, that would "be one reason to deny a reduction." *Id.* The possibility of such a motion getting filed is not a reason to invalidate a duly promulgated policy statement. And the present case is nothing like a § 2255 motion. Black is asking for discretionary relief based on his unusually long sentence, which involves a gross disparity resulting from a legal change that does not implicate the validity of his sentence. No part of this claim falls within the purview of § 2255.

## B. The policy statement is not contrary to the primary purpose of the Sentencing Reform Act.

The government also argues that the Commission's policy statement undermines the Sentencing Reform Act's primary purpose. That is, the policy statement "effectively reproduces the indeterminate system the Act sought to eliminate—in which judges applied their own varied 'notions of the purposes of sentencing.'" Gov't Br. 51, *quoting* S. Rep. 98-225, at 38.

Black anticipated this line of argument, and he addressed it in his opening brief. Def. Br. 39-42. To summarize, judicial sentence reduction is

nothing like parole, and Congress in 1984 would not have thought otherwise. The Sentencing Commission expressly considered the SRA's history in devising § 1B1.13(b)(6). The government's notion that § 1B1.13(b)(6) creates disparities although it purports to eliminate "gross disparit[ies]" is quintessentially a policy disagreement with the Commission's decision to promulgate § 1B1.13(b)(6), not an argument that § 1B1.13(b)(6) is invalid. *See* Gov. Br. 39-43.

But the government soldiers on. The government charges that the policy statement brings back indeterminate sentencing because the terms that the Sentencing Commission used—"unusually long" and "gross disparity"—are "unworkably vague" and "invite arbitrary application." Gov't Br. 49. To advance that point, the government cites a handful of cases that have taken conflicting views as to the meaning of "unusually long" and "gross disparity." Gov't Br. 49-51.

Here, again, the government is disagreeing as a policy matter with § 1B1.13(b)(6)—but focusing now on the details. The government does not like the Sentencing Commission's word choices. But the fact that different judges, in different cases, have applied § 1B1.13(b)(6)'s language in differing ways does not suggest that the policy statement takes the sentencing system back to the pre-SRA era. Indeed, given that the district courts are working with a

new standard, differences are to be expected. Over time, the circuit courts can work through the kinks.

In the end, it is unlikely that the government would be mollified by commentary clarifying that "unusually long" means 40 years, or 25, or 80, or that a "gross disparity" is a disparity of some particular length. And a policy statement with that level of specificity would come with a different set of problems: The Commission cannot construct an algorithm that unquestionably produces a precise result in each case.

The government's complaint reduces to a charge that there might be a better way to handle the problem of disparities. But Congress delegated to the Sentencing Commission, not the government, the job of determining what circumstances would permit a sentence reduction under § 3582(c)(1)(A). Perhaps a future Commission will promulgate a more restrictive set of policies, or a more expansive one. The current Commission promulgated the current policy statement at § 1B1.13. And now that the Commission has exercised that authority, courts must do what they always do: sort out how the Commission's standards apply to differing sets of facts.

### C. The policy statement does not present a separation-of-powers problem.

The government claims that § 1B1.13(b)(6) creates "tension" with separation-of-powers principles. The bulk of this section of the government's brief is devoted simply to an argument that since Congress did not make the amendment to section 924(c) fully retroactive, that means that Congress has forbidden the Commission from permitting courts to consider the amendment as a basis for granting relief. Gov't Br. 54-58.[12] With this argument, too, Black anticipated the government's arguments and already responded to them. Def. Br. 43-50. The government sees an inconsistency that does not exist. And because § 1B1.13(b)(6) does not conflict with any statute, there is no separation-of-powers problem.

When Congress amended § 924(c) in First Step Act § 403, it did not make the change fully retroactive by providing across-the-board relief to all defendants with stacked sentences. But Congress also did not decide to

---

[12] The government at one point suggests that the determination of what kinds of circumstances justify reducing penalties is a particular question of legislative policy. Gov. 54. But it does not explain this claim and there is no reason that the express delegation at issue here—regarding sentence reductions, and coming with an "extraordinary and compelling" requirement and a rehabilitation-focused limitation—would be more problematic than Congress's delegation to the Commission of the power to set mandatory sentencing ranges, which the Supreme Court approved of in *Mistretta v. United States*, 488 U.S. 361 (1989).

restrict a separate statute regarding discretionary sentence reduction under terms and conditions to be imposed by the Commission. Congress did not prohibit courts, or the Sentencing Commission, from considering as part of a holistic analysis the impact of § 403 on sentence reduction requests.[13]

In response to these arguments, made in Black's opening brief, the government returns to its main theme: the language of section 3582(c)(1)(A) has a plain meaning that categorically excludes consideration of circumstances related to legal changes. Gov't Br. 57. But as already discussed, section 3582(c)(1)(A) has no plain meaning with respect to the question that is before this Court. Whether some gross disparities related to

---

[13] The government claims that its separation-of-powers concern "is particularly apparent" when one considers the fact that § 1B1.13(b)(6) expressly excludes consideration of legal changes arising from nonretroactive guideline amendments. Gov. Br. 55. It is not at all clear why this would be so. As noted above, the Commission may have determined that circumstances related to guideline amendments are particularly unlikely to be "extraordinary and compelling," given that the Sentencing Guidelines are advisory and serve only to channel district courts' discretion within a statutory range. Further, the Sentencing Commission promulgates multiple amendments every single year. Thus, the Commission reasonably could have decided as a policy matter that the exclusion in § 1B1.13(b)(6) would help keep the provision from overwhelming the courts. Alternatively, the Sentencing Commission may have thought that *Dillon v. United States*, 560 U.S. 817 (2010), precluded it from permitting individuals who cannot get relief under § 1B1.10 to get relief under § 1B1.13. *See* U.S.S.G. App'x C amend. 814 (Reason for Amendment) (indicating that the exclusion was based, at least in part, on "[p]ublic comment" asking for clarification of the interaction between §1B1.13 and §1B1.10 in light of *Dillon*). Regardless, this exclusion has no relevance to the question before the Court.

certain legal changes might amount to an "extraordinary and compelling reason" for reducing a sentence is a contextual, nuanced, case-specific, value-laden question. Black has demonstrated that the delegation of authority at § 3582(c)(1)(A), considered alongside 28 U.S.C. § 994(t)), and § 1B1.13(b)(6) more specifically, can exist side-by-side with First Step Act § 403.

## CONCLUSION

The Court should vacate the district court's order denying Black's motion for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and it should remand for further proceedings.

DATED: August 7, 2024

Respectfully submitted,

*/s/ William H. Theis*

William H. Theis
2027 E. 17th St.
Lawrence, KS 66044
(847) 275-3080
william_theis@att.net

## CERTIFICATE OF COMPLIANCE WITH
## RULE 32(A)(7)

The undersigned, counsel for Appellant, certifies that this brief complies with the type-volume limitations of Rule 32(a)(7), in that it contains 5,827 words, in a 13-point Century Schoolbook font. This certification is based on the word count of Microsoft Word, the word processing program used in preparing this opening brief.

Dated August 7, 2024.

Respectfully submitted,

*/s/ William H. Theis*
William H. Theis
*Attorney for Defendant-Appellant*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on August 7, 2024, he electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals by using the CM/ECF system. He further certifies that all participants in the case are registered CM/ECF users and that all service will be accomplished by the CM/ECF system.

Respectfully submitted,

*/s/ William H. Theis*
William H. Theis
*Attorney for Defendant-Appellant*