24-1191

In the
**United States Court of Appeals**
For the Seventh Circuit

———••———

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

EURAL BLACK,
*Defendant-Appellant.*

————————————————————————

On Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division
No. 05 CR 70-4
The Honorable Lindsay C. Jenkins

## APPELLANT'S PETITION FOR REHEARING EN BANC

William H. Theis
2027 E. 17th St.
Lawrence, KS 66044
(847) 275-3080
william_theis@att.net

*Attorney for Defendant-Appellant Eural Black*

APRIL 8, 2025

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

The undersigned counsel of record for Defendant-Appellant Eural Black furnishes the following list in compliance with Fed. R. App. P. 26.1 and Circuit Rule 26.1:

1.      The full name of the party represented is Eural Black.

2.      Mr. Black is a natural person and not a corporation.

3.      In the district court, Mr. Black was represented by Steven Richard Hunter, the Federal Defender Program, Inc., and William H. Theis. In this Court, Mr. Black is represented by William H. Theis.


*/s/ William H. Theis*
William H. Theis
*Attorney for Defendant-Appellant*
*Eural Black*

Dated: April 8, 2025

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ..........................................................i

TABLE OF CONTENTS...........................................................ii

TABLE OF AUTHORITIES ....................................................iii

REASONS FOR GRANTING REHEARING EN BANC ......................... 1

BACKGROUND...................................................................3

DISCUSSION.....................................................................8

    I.    This case presents an issue of exceptional
        importance.....................................................................9

    II.   The panel majority's holding perpetuates and
        deepens a circuit split in a new
        context...........................................................................11

    III.  The panel majority's holding conflicts with Supreme Court
        precedent........................................................................13

CONCLUSION....................................................................17

CERTIFICATE OF COMPLIANCE WITH RULE 32(A)(7)............... 18

CERTIFICATE OF SERVICE....................................................19

# TABLE OF AUTHORITIES

## Cases

*Braxton v. United States*, 500 U.S. 344 (1991) ...................................... 10

*Concepcion v. United States*, 597 U.S. 481 (2022)................................. 16

*Dean v. United States*, 581 U.S. 62 (2017).......................................... 16

*Dillon v. United States*, 560 U.S. 817 (2010).......................................... 3

*In re Thomas*, 91 F.4th 1240 (7th Cir. 2024).................................... 14

*Maine Community Health Options v. United States*, 590 U.S. 296 (2020) ................................................................................................ 14

*Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012) (en banc) ................................................................................................ 11

*Morton v. Mancari*, 417 U.S. 535 (1974)................................... 2, 13, 15

*Rodriguez v. United States*, 480 U.S. 522 (1987) ................................ 16

*Setser v. United States*, 566 U.S. 231 (2012) ....................................... 15

*Sotelo v. United States*, 922 F.3d 848 (7th Cir. 2019) .......................... 11

*Stinson v. United States*, 508 U.S. 36 (1993)......................................... 9

*United States v. Black*, 715 F.Supp.3d 1069 (N.D. Ill. 2024) ................ 7

*United States v. Black*, 999 F.3d 1071 (7th Cir. 2021) ........................... 7

*United States v. Booker,* 543 U.S. 200 (2005)........................................ 3

*United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) ........................... 4

*United States v. Chen*, 48 F.4th 1092 (9th Cir. 2022)...................... 5, 11

*United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020)........................... 4

*United States v. LaBonte*, 520 U.S. 751 (1997) .................................... 14

*United States v. Monroe*, 580 F.3d 552 (7th Cir. 2009)......................... 15

*United States v. Ramsey*, 237 F.3d 853 (7th Cir. 2001) ....................... 10

*United States v. Ruvalcaba*, 26 F.4th 14 (1st Cir. 2022) ........................ 4

*United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021) ...................*passim*

*United States v. Williams*, 65 F.4th 343 (7th Cir. 2023) .............. 2, 6, 11

## Statutes

18 U.S.C. § 3553(a) ............................................................................. 3, 9

18 U.S.C. § 3582(c)(1)(a) ...............................................................*passim*

18 U.S.C. § 924(c)...........................................................................*passim*

28 U.S.C. § 994(h)..................................................................................4

28 U.S.C. § 994(t) ................................................................................... 3

Pub. L. No. 115-391, § 403, 132 Stat. 5221 .............................................. 5

## Other Authorities

https://www.ussc.gov/policymaking/public-comment/public-comment-
march-14-2023#comp. ............................................................. 6
https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-
hearings-and-meetings/20230223-24/0223_Transcript.pdf................. 6

## Rules

Fed. R. App. P. 40(b) ............................................................ 1, 2
Federal Rule of Criminal Procedure 35 .................................... 9

## Regulations

U.S.S.G. § 1B1.13(b)(6) ....................................................*passim*

## REASONS FOR GRANTING REHEARING EN BANC

The three-judge panel that decided this case wrote three separate opinions, underscoring that the issues presented here are complex, controversial, and worthy of en banc review. The question presented is whether the district court erred in rejecting Mr. Black's motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(a) and the policy statement at U.S.S.G. § 1B1.13(b)(6) as a matter of law. The lead opinion, authored by Judge Kirsch, makes a sweeping pronouncement: the Sentencing Commission lacked authority to promulgate § 1B1.13(b)(6) and thus that policy statement is void. *Black*, slip op. at 7–9. A short concurring opinion by Judge Ripple urges that circuit precedent, *United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021), requires affirmance. *Black*, slip op. at 14. Judge Hamilton dissented, finding that the Commission's promulgation of § 1B1.13(b)(6) utterly changed the legal landscape on which *Thacker* was decided and that this policy statement should be treated as law because it was reasonable and did not conflict with statutory law. *Black*, slip op. 13–16. Judge Hamilton would have reversed and remanded the case to the district court to determine how §§ 3582(c)(1)(A) and 1B1.13(b)(6) apply to its facts. *Id.* at 16–17.

This case merits en banc rehearing for three reasons. First, this case raises an issue of exceptional importance. *See* Fed. R. App. P. 40(b)(2)(D). The panel majority would invalidate a policy statement that the Sentencing

Commission duly promulgated under an express delegation of policy-making authority and that would otherwise have mandatory legal effect. This will impact numerous cases, precluding sentence reductions as a legal matter for a class of persons who would be eligible for such reductions in other circuits. Moreover, the panel majority decision impacts more generally how courts relate to the Sentencing Commission's work, potentially undermining the Sentencing Reform Act's goal of reducing unwarranted sentencing disparities.

Second, the panel majority's decision conflicts with authoritative decisions of other Courts of Appeals. *See* Fed. R. App. P. 40(b)(2)(C). The relevant circuit split predates the Sentencing Commission's adoption of § 1B1.13(b)(6), so the split is not expressly about that policy statement. But this case unquestionably perpetuates and deepens the preexisting split. See *United States v. Williams*, 65 F.4th 343, 349 (7th Cir. 2023) (discussing the split).

Third, the holding conflicts with Supreme Court precedent. *See* Fed. R. App. P. 40(b)(2)(B). The panel majority, in finding that the policy statement conflicts with statutory authority, neglected to pay heed to the well-established doctrine that "when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *See, e.g., Morton v. Mancari*, 417

U.S. 535, 541 (1974). As Judge Hamilton explained, § 1B1.13(b)(6) is capable of coexisting with all relevant statutes, both as a general matter and as applied here.

## BACKGROUND

Under the Sentencing Reform Act, a sentencing court may reduce a prison sentence, as a matter of discretion, where "extraordinary and compelling reasons warrant such a reduction" and the sentencing factors under 18 U.S.C. § 3553(a) support such reduction, so long as the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Act further requires the Sentencing Commission to promulgate a policy statement regarding § 3582(c)(1)(A) that "describe[s] what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t).

The upshot is that Congress expressly delegated to the Commission the task of determining what sorts of circumstances can be considered "extraordinary and compelling," permitting a discretionary sentence reduction, under § 3582(c)(1)(A). And the policy statement setting out the Commission's determination acts as mandatory authority, even after *United States v. Booker,* 543 U.S. 200 (2005). *See Dillon v. United States*, 560 U.S. 817, 825 (2010) (addressing § 3582(c)(2), which shares prefatory language).

The only restrictions on the Sentencing Commission's authority are that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason," § 994(t), and the Commission's policy statement cannot violate the Constitution or statutory law. The parties agree on all these points.

Until 2018, only the Bureau of Prisons had the authority to file a sentence-reduction motion under § 3582(c)(1)(A). *See United States v. Brooker*, 976 F.3d 228, 231 (2d Cir. 2020). In 2018, Congress permitted defendants to file such motions on their own behalf. *Id.* At that time, however, the Sentencing Commission's policy statement addressing §§ 3582(c)(1)(A) and 994(h) specifically set out guidelines only for motions filed by the BOP, and the Sentencing Commission could not amend that policy statement because it lacked a quorum. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Thus, nearly every circuit, including this one, held that there was no policy statement applicable to defendant-filed motions, and thus district courts should decide for themselves whether a set of circumstances sufficed as "extraordinary and compelling reasons" supporting a sentencing reduction. *Id.*; *see also, e.g.*, *United States v. Ruvalcaba*, 26 F.4th 14, 21 (1st Cir. 2022) (collecting cases).

During this unsettled period, this Court in *Thacker* was asked whether a district court could decide, as a matter of discretion, that a legal change presented an "extraordinary and compelling reason" for a sentence reduction. This was in the context of a "stacked 924(c)" case in which a person received mandatory, consecutive 25-year sentences under 18 U.S.C. § 924(c) that were no longer mandated.[1] *Thacker*, 4 F.4th at 571. At the time this Court decided *Thacker*, two other circuit courts—the Fourth and Tenth—had held that, yes, legal changes could be considered (on a case-by-case basis, and subject to slightly different standards) as a matter of discretion, and two others—the Sixth and Eighth—had held otherwise. *Thacker*, 4 F.4th at 575–76. This Court sided with the latter courts, holding that "there is nothing 'extraordinary' about leaving untouched the exact penalties that Congress prescribed and that a district court imposed for particular violations of a statute." *Id.* at 574. Post-*Thacker*, the split deepened, ultimately pitting the First, Fourth, Ninth, and Tenth Circuits against the Third, Sixth, Seventh and Eighth Circuits. *United States v. Chen*, 48 F.4th 1092, 1096–97 (9th Cir. 2022) (discussing the split). In the spring of 2023, this Court recognized that

[1] The First Step Act of 2018 included an amendment to 18 U.S.C. § 924(c) that eliminated "stacked section 924(c)" sentences. Pub. L. No. 115-391, § 403, 132 Stat. 5221.

the circuit split had deepened since *Thacker*, and it remarked that "the issue is teed up, and either the Commission or the Court (we hope) will address it soon." *United States v. Williams*, 65 F.4th 343, 349 (7th Cir. 2023).

The Sentencing Commission did address this situation. With a newly regained quorum, in 2023 the Commission took public comments on a new policy statement that would address the amended § 3582(c)(1)(A) and held a day-long hearing on the matter.[2] Ultimately, it submitted to Congress a policy statement, U.S.S.G. § 1B1.13(b)(6), which allows a court to find that "extraordinary and compelling" reasons exist, permitting it to reduce a sentence as a matter of discretion, if four conditions are satisfied: (i) the defendant is serving an unusually long sentence; (ii) the defendant has served at least ten years of that sentence; (iii) an intervening change in the law has produced a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed; and (iv) the court has fully considered the other, particularized circumstances of the defendant. (The Commission also identified other circumstances that could be

---

[2] Public comments are available at https://www.ussc.gov/policymaking/public-comment/public-comment-march-14-2023#comp. The hearing transcript is available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20230223-24/0223_Transcript.pdf.

considered extraordinary and compelling, which are not at issue in this case.) Congress permitted the policy statement to go into effect.

Black, who in 2008 had been sentenced to 40 years' imprisonment based largely on stacked 924(c) sentences, filed a motion for sentence reduction under § 3582(c)(1)(A) and the new § 1B1.13(b)(6).[3] The district court denied it as a legal matter, ruling that § 1B1.13(b)(6) was invalid without determining whether or how § 1B1.13(b)(6) by its terms would apply to Black—or, if it did apply to him, whether the court would be inclined to reduce the sentence as a matter of discretion. *United States v. Black*, 715 F.Supp.3d 1069, 1079–80 (N.D. Ill. 2024). Black appealed that decision.

The core question in this appeal is whether the Sentencing Commission was authorized to permit judges, through § 1B1.13(b)(6), to determine that some sentencing disparities related to legal changes, in specified circumstances, are "extraordinary and compelling." The lead panel opinion answers this question negatively, reasoning that because the First Step Act's anti-stacking amendment to § 924(c) was prospective only, permitting a

---

[3] During the pandemic, Black had filed an earlier motion under § 3582(c)(1)(A), which was the subject of *United States v. Black*, 999 F.3d 1071 (7th Cir. 2021). This Court in this earlier appeal suggested that a legal change could be considered in the § 3582(c)(1)(A) analysis, *id.* at 1075, but by the time the motion was heard in the district court (post-remand), this Court had decided *Thacker*, which, in the absence of a superseding policy statement, foreclosed a sentence reduction.

district court to consider a disparity related to that amendment in the context of determining whether to reduce a sentence violates that Act. The opinion focuses not on the text of § 3582(c)(1)(A) or § 994(t) but more particularly on a purported conflict between § 1B1.13(b)(6) and the anti-stacking amendment. The lead opinion does not, however, couch this holding as addressing a particular application of § 1B1.13(b)(6) (say, to motions based on the anti-stacking amendment). Instead, it states that the Sentencing "Commission exceeded its statutory authority" in promulgating § 1B1.13(b)(6), *Black*, slip op. at 7, a broad statement that if read literally would seem to strike down § 1B1.13(b)(6) in its entirety.[4]

## DISCUSSION

This case warrants en banc review for multiple reasons. The issue presented here is of the highest importance because of its implications for both individual defendants and the Sentencing Commission's ability to set national sentencing policy. Moreover, the panel majority opinion perpetuates a circuit split that predates § 1B1.13(b)(6). Finally, the panel majority

---

[4] It appears that the Court will consider whether § 1B1.13(b)(6) is valid as applied to a different circumstance in at least one currently pending case. *See United States v. Taylor*, No. 24-2346, ECF#30 (Mar. 15, 2025), ECF#31 (Mar. 19, 2025, and ECF#34 (Apr. 3, 2025)).

opinion is wrong, and in a way that conflicts with Supreme Court precedent.

## I. This case presents an issue of exceptional importance.

The panel majority invalidated a policy statement that would permit district courts, in specified cases that meet (b)(6)'s requirements, to lower prison sentences.[5] The Sentencing Reform Act abolished parole and created just three statutory mechanisms for reducing prison sentences. Under the panel majority opinion in this case, one of these three mechanisms,[6] § 3582(c)(1)(A), is significantly curtailed—for individuals sentenced within this circuit, although not within many other circuits.

This is quite extraordinary: the panel majority invalidated an otherwise mandatory policy statement duly promulgated by the Sentencing Commission. In general, where different federal courts might decide a particular policy-laden interpretive issue related to sentencing one way or the other, once the Sentencing Commission enters the fray, courts defer to that body. *See, e.g., Stinson v. United States*, 508 U.S. 36, 39 (1993) (reversing the

---

[5] Whether to grant a motion for sentence reduction is ultimately a discretionary call by the district court; even if (b)(6) is satisfied, the court must find that a reduction is consistent with the 18 U.S.C. § 3553(a) factors. *See* § 3582(c)(1)(A).

[6] The other mechanisms are found in the same statutory section: reduction based on retroactive guideline amendments (§ 3582(c)(2)), and reduction based on a government motion relating to substantial assistance (§ 3582(c)(1)(B), cross-referencing Federal Rule of Criminal Procedure 35.

Eleventh Circuit for following its own precedent rather than guideline commentary postdating earlier circuit precedent, which had resolved a circuit split against the Eleventh Circuit's position).

This deference makes sense, given that Congress created the Commission to set consistent, nationwide sentencing policy for the federal criminal justice system. *Braxton v. United States*, 500 U.S. 344, 348 (1991); *see also United States v. Ramsey*, 237 F.3d 853, 856–57 (7th Cir. 2001). These policies are subject to change over time, as presidents appoint (and the Senate confirms) new policymakers to the Commission. But it is extraordinary for a circuit court to declare an otherwise-mandatory policy statement invalid based on circuit precedent predating that policy statement, which addressed an issue about which the circuit courts were deeply divided. In fact, Congress has intended the opposite relationship between the Commission and the courts. As *Braxton* observed, ". . . Congress necessarily contemplated that the Commission would periodically review the work of the courts, and would make whatever clarifying revisions to the Guidelines conflicting judicial decisions might suggest." *Id.*

**II. The panel majority's holding perpetuates and deepens a circuit split in a new context.**

The lead opinion declares that *Thacker* has already decided the question raised in Black's case, and the concurring opinion endorses this reading of *Thacker*. But *Thacker* did not resolve—and could not have resolved—the validity of the Commission's policy statement, since *Thacker* did not have an applicable policy statement to consider. And unquestionably, this Court can reexamine a prior decision when there is a compelling reason, such as a supervening legal development. *See Sotelo v. United States*, 922 F.3d 848, 851–52 (7th Cir. 2019). The doctrine recognized in *Sotelo* extends to decisions rendered en banc as well as to decisions rendered by a panel. *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 848 (7th Cir. 2012) (en banc). This Court recognized that reality when it noted in 2023 that the circuit split had deepened since *Thacker*, and it remarked that "the issue is teed up, and either the Commission or the Court (we hope) will address it soon." *Williams*, 65 F.4th at 349. See *United States v. Chen*, 48 F.4th 1092, 1096–97 (9th Cir. 2022) (discussing the split).

Far from being bound by *Thacker*, the panel majority in relying on *Thacker* perpetuated and deepened a circuit split that *Thacker* was part of, by carrying it over from the context of a holding about judicial discretion in

the absence of an applicable policy statement, into this new context. Before 2023, the circuits were deeply divided over whether district courts could consider legal changes in § 3582(c)(1)(A)'s "extraordinary and compelling" analysis. But since the Sentencing Commission is the entity that Congress tasked with determining what sorts of circumstances could be considered "extraordinary and compelling" in the § 3582(c)(1)(A) context, the Commission's promulgation of § 1B1.13(b)(6) presents an opportunity for courts on the *Thacker* side of the split to resolve that split, by deferring to the Sentencing Commission's new policy statement, as Congress intended. And as Judge Hamilton explained in his dissenting opinion, "the circuit split that emerged before the Commission acted in 2023 is powerful evidence that the Commission's new policy statement resolving the circuit split is reasonable and does not conflict with other statutes"—even if the Commission's interpretation of relevant statutes is different than the one that judges on this Court would have made. *Black*, slip op. at 16. But rather than using this case as an opportunity to resolve a circuit split, the panel majority ensured that the split persists in this new context.

### III. The panel majority's holding conflicts with Supreme Court precedent.

The lead opinion frames the issue in this case as a conflict between § 1B1.13(b)(6) and First Step Act § 403, which amended § 924(c)'s stacking provision. The opinion acknowledges that because Congress explicitly delegated to the Sentencing Commission the authority to define what is "extraordinary and compelling," the Commission's interpretation of that phrase "supersedes the court's" unless its interpretation exceeds the scope of the authority that Congress explicitly delegated." *Black*, slip op. at 7–8. So the case comes down to whether there is a conflict between § 1B1.13(b)(6) and statutory authority. In deciding that there was such a conflict, the panel majority misapplied Supreme Court law.

According to the Supreme Court, in response to a claim that two statutory provisions conflict, a court must attempt to reconcile them. This framework is classically stated in *Morton v. Mancari*, 417 U.S. 535 (1974), which confirmed that it is a "cardinal rule" that "repeals by implication are not favored." 417 U.S. at 549. Expanding on this "cardinal rule," *Morton* explained that, "The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention

to the contrary, to regard each as effective." *Id.* at 541. Only when there is an "irreconcilable conflict" may a court declare that one statute has impliedly repealed another. *Accord, Maine Community Health Options v. United States*, 590 U.S. 296, 315 (2020); *United States v. LaBonte*, 520 U.S. 751 (1997) (explaining that the Sentencing Commission has broad discretion but must "bow to the specific directives of Congress").

Section 1B1.13(b)(6) and First Step Act § 403 can stand side by side. As Judge Hamilton explained in dissent, § 1B1.13(b)(6) "can easily co-exist with Congress's decision in the First Step Act to deny full retroactive effect to the change in § 924(c)'s stacking provision, which would have automatically entitled all defendants with stacked § 924(c) charges to full and immediate consideration of resentencing." *Black*, slip op. at 16. The fact that the First Step Act's anti-stacking amendment is not retroactively applicable means that a person serving a sentence imposed under the prior version of § 924(c) cannot claim that his or her sentence is illegal based on the amendment, and cannot seek relief under the amendment. But neither § 1B1.13(b)(6)'s text nor Black's invocation of § 1B1.13(b)(6) makes any such claim. As this Court recognized in *In re Thomas*, 91 F.4th 1240 (7th Cir. 2024), a sentence-reduction motion does not challenge the legality of a sentence; it simply asks the district court "to consider revising" a sentence "in light of a development

completely external to the court's original judgment." *Id.* at 1242, quoting *United States v. Monroe*, 580 F.3d 552, 556–57 (7th Cir. 2009).[7]

Even the lead opinion recognizes, albeit imperfectly, that the two statutes can stand side by side. It permits district judges to consider the anti-stacking amendment in the second step of the § 3582(c)(1)(A) analysis (regarding § 3553(a) factors). *Black*, slip op. at 13. But it does not explain how consideration of disparities related to the First Step Act's anti-stacking amendment at step one of the § 3582(c)(1)(A) analysis could work an implied repeal of Congress's decision not to make that amendment retroactively applicable, while consideration of the exact same disparities at step two would have no such effect.

Beyond *Morton* and its progeny, the panel majority's holding in this case contradicts Supreme Court precedent rejecting efforts to read limitations into sentencing statutes based on silent implications from Congress. In

---

[7] This is analogous to the situation in *Setser v. United States*, 566 U.S. 231 (2012), in which the Supreme Court interpreted a sentence-credit issue against the defendant based on statutory text but noted that if a district court's failure to anticipate the effect of that statutory text in a particular case "produces unfairness to the defendant," the court could find that this met § 3582(c)(1)(A)'s extraordinary-and-compelling-reasons standard for sentence reduction. 566 U.S. at 242-43. That is, the Supreme Court recognized that the impact of a legal rule on a particular defendant could justify a sentence reduction, without creating a conflict with the legal rule.

*Rodriguez v. United States*, 480 U.S. 522 (1987), the Court rejected an

argument that a newer statute setting penalties for crimes committed on bail

impliedly limited an earlier statute—which granted discretion to suspend

sentences—because "[n]othing in the language" of the newer law addressed

the question. *Id*. at 524–25. In *Dean v. United States*, 581 U.S. 62, 68–71

(2017), the Court rejected a limit on general sentencing discretion under §

3553(a) based on the supposed purposes of § 924(c)'s mandatory-minimum

requirements—because the second statute said nothing about the first one.

And in *Concepcion v. United States*, 597 U.S. 481 (2022)the Court rejected an

argument that district courts were limited in what they could consider in the

context of a sentence-modification proceeding under First Step Act § 404—

including "nonretroactive intervening changes of law"—because "Congress is

not shy about placing such limits" "express[ly]" and had not done so in the

First Step Act. *Id*. at 493-94.

    So too here. Congress knows how to limit the meaning of

"extraordinary and compelling," as that phrase is used at § 3582(c)(1)(A). It

did so in § 994(t), which says that "[r]ehabilitation...alone" may not suffice.

More to the point here, since the panel majority focused on First Step Act

§ 403,[8] the First Step Act "says nothing about" what justifies relief under the sentence-modification statute, § 3582(c)(1)(A), "much less about what information a court may consider" in an analysis under that statute. *Dean*, 581 U.S. at 69.

## CONCLUSION

The Court should grant the petition for rehearing en banc.

DATED: April 8, 2025

Respectfully submitted,

*/s/ William H. Theis*

William H. Theis
2027 E. 17th St.
Lawrence, KS 66044
(847) 275-3080
william_theis@att.net

---

[8] The panel majority was apparently unwilling to take the even more unsupportable position that the policy statement at § 1B1.13(b)(6) conflicts more directly with the text of § 3582(c)(1)(A) or 28 U.S.C. § 994(t).

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)(7)

The undersigned, counsel for Appellant, certifies that this brief complies with the type-volume limitations of Rule 32(a)(7), in that it contains 3,588 words, in a 13-point Century Schoolbook font. This certification is based on the word count of Microsoft Word, the word processing program used in preparing this opening brief.

Dated April 8, 2025.

Respectfully submitted,


*/s/ William H. Theis*
William H. Theis
*Attorney for Defendant-Appellant*

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 8, 2025, he electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals by using the CM/ECF system. He further certifies that all participants in the case are registered CM/ECF users and that all service will be accomplished by the CM/ECF system.

Respectfully submitted,

*/s/ William H. Theis*
William H. Theis
*Attorney for Defendant-Appellant*